George Ketchmark, Leo Osborne, Jerry Capps and Harry
Betzel, as Trustees and as Individual Taxpayers of
the Village of Romeoville, an Illinois Municipal Cor-
poration, Plaintiffs-Appellants, v. John D. Lynch,
Neal Murphy, President of the Village of Romeo-
ville, an Illinois Municipal Corporation, Mark Delay,
Clerk of the Village of Romeoville, and Herbert
Huls, Treasurer of the Village of Romeoville, De-
fendants-Appellees.

Gen. No. 68–61.

Third District.

March 4, 1969.

Scariano and Gubbins, of Chicago Heights, for appellants.

Murphy, Timm and Lennon, of Joliet, for appellees.

SCHEINEMAN, J.

This case involves the question of construction of the Municipal Code with respect to the right of a mayor or village president to vote on ordinances.

Prior to 1941 a mayor or the president of the village board had no right to vote except to break a tie. In 1941 the law was amended to enlarge the presiding officer's voting privileges. This caused certain unforeseen ambiguities in the Cities and Villages Statute. For example, does a reference to the members of a council or board of trustees include the mayor or president of the board?

The ambiguities and inconsistencies presented a field for dispute between mayors and councils, and between boards of trustees and their presidents, of which the legislature became aware. Accordingly it created a commission to propose such revisions as seemed to be necessary. The commission presented its report to the 1961 Legislature, consisting of a Municipal Code together with annotations designed to acquaint the Legislature with the effect of the proposed changes. The new code was

adopted in May of 1961 and is now in chapter 24 Ill Rev Stats.

The numbered references in this opinion are to the section numbers of chapter 24. The revision commission's notes of explanation are largely reported in Smith-Hurd Annotated Statutes as part of the notes to the altered sections.

By section 3–12–5 a village board of trustees is treated as similar to a city council, and its president is similar to the mayor of a city. Therefore, most of the references herein will be to the laws concerning mayors and aldermen, since the section above cited results in a village government being, for our purposes, the same as a city's.

There is no dispute of fact. The Board of Trustees of Romeoville consisted of the president and six elected trustees, one of whom had resigned. On August 16, 1967, an ordinance was presented abolishing the office of Village Attorney. Four trustees (plaintiffs-appellants) voted for it. One trustee and the Village President voted against it. On August 28 the Village President vetoed the ordinance by letter. On September 6 at a meeting of the Board, the letter was presented to them. A motion was made and seconded to override the veto, the same four trustees voted for the motion, and the other trustee and the president voted "no." The president declared the veto stood. This suit was filed for a declaratory judgment, for injunctive relief and for mandamus. The trial court entered judgments for the defendants, and plaintiffs took this appeal.

Therefore, this suit presents an aftermath of the ambiguity that existed for 20 years, but which the revision was intended to resolve. It has reference to various phrases such as members of the city council or aldermen or corporate authorities. The mayor is certainly a corporate authority, hence in actions in which he has a vote, uniform usage in the Code is to specify the portion of the *corporate authorities* required to pass an ordinance.

When the Legislature deems it desirable to exclude the mayor, such as in voting to override a veto, or to create or discontinue an office over which the mayor is given appointive power, it had to use some other word.

The commissioners believed they had solved the problem, which they explained in their note to 3–11–19 (passing over veto) reported in SHAS as follows:

"Old section 50 provides for the passage over the mayor's veto by 2/3rds 'of all the members elected to the city council.' We have eliminated the word 'members' and have substituted the word 'aldermen.' Our reason for doing this is that 'members' may be thought to include the mayor and thus run into the difficulty of interpretation that arose under old section 44. Our suggested wording makes it clear, we think, that the mayor is not entitled to vote on reconsideration where an ordinance, etc. has been passed over his veto."

The sentence thus referred to in the law reads: "If, after such reconsideration, 2/3rds of all the aldermen elected to the City Council shall agree to pass an ordinance, resolution or motion, notwithstanding the mayor's refusal to approve it, then it shall be effective."

This type of wording is also used in 3–7–1 concerning creation and discontinuance of appointive offices, and in 3–4–19, in both of which 2/3rds of the aldermen must vote for an ordinance to make it effective. With equal consistency the word "trustees" is used instead of the board of trustees where the village president is excluded. See 3–12–5.

As an example of a change in wording to make it clearer that the mayor does have a vote, we refer to section 11–76–1 which provides for the sale of real estate no longer needed. Prior to the revision it required that an ordinance for this purpose be "passed by 3/4ths of the members of the city council . . . or the board of trustees of any such village."

This ambiguous phrase which may or may not include a mayor, was replaced in the revision by the words: "passed by ¾ths of the corporate authorities of the city or village" . . . thereby giving the presiding officer a vote.

Thus it becomes apparent, when the Legislature adopted the recommendations of the Commission it used standardized phrases to express its will, in the attempt to avoid ambiguity as to whether or not the presiding officer had a vote. If he has no vote the reference is made uniformly to the elected aldermen or trustees, if he is entitled to vote the uniform reference is to the "corporate authorities," which include the presiding officer.

The result in the trial court arose over the application of 3-11-14 which counsel were able to convince the trial court still had the old ambiguous terminology the Commission was supposed to avoid. This section reads:

"The mayor shall preside at all meetings of the city council. He shall not vote on any ordinance, resolution or motion except: (1) where the vote of the aldermen has resulted in a tie; or (2) where half of the aldermen elected have voted in favor of an ordinance, resolution or motion even though there is no tie vote; or (3) where a vote greater than a majority of the corporate authorities is required by this Code to adopt an ordinance, resolution or motion."

The above section presents three classes of propositions in which the presiding officer is to vote: (1) to break a tie, which has always been the law. (2) The special situation which was presented in McLean v. City of East St. Louis, 222 Ill 510, 78 NE 815 (cited in the briefs as present law), and (3) when the ordinance voted upon concerns a provision of the Code requiring more than a majority vote of "the corporate authorities."

Counsel apparently overlooked this comment in the notes, 3-11-14 wherein the Commission points out that the provision above referred to as Class (2) would have the effect of overriding McLean v. City of East St.

Louis, above cited, so that upon adoption of this section that case ceased to be the law in that particular state of facts.

It is partly in reliance upon that case the appellees argue that four aldermen do not constitute a ⅔rds majority because in their theory the mayor does have a vote, therefore there would have to be a total of five votes on the ordinance to constitute ⅔rds of the whole.

The ordinance involved in this suit is enacted under 3–7–1 in which there is no reference to "corporate authorities." It requires a ⅔rds vote of all the aldermen elected, in the standardized phraseology as stated in the note to 3–11–14. The mayor has no vote on this type of ordinance under 3–7–1.

Appellees contend the ambiguities were retained in the law despite the revision, and "members of the council, aldermen, and corporate authorities are still used almost interchangeably," citing 1–1–2(8), which states that "when the words city council, alderman, commissioners or mayor occur, the provisions containing these words shall apply to the board of trustees, trustees and president, respectively, of villages and incorporated towns . . . ."

We do not regard this definition as making the words in the two series interchangeable, but rather they equate words referring to city officials to the corresponding village officials, *respectively*. Thus, "board of trustees" is equated to "city council," "trustees" to "aldermen," and "president" to "mayor."

■ When the drafting of legislation or other writings is done by a committee which also writes notes or comments explaining the intended purposes of the proposed draft, it is common practice for courts to refer to the Committee Notes when construing the wording referred to, since the thinking thus expressed is a valuable guide to legislative intent.

41

■ Appellees brief, in arguing that a mayor is included in the word "alderman" ignores the note to 3–11–19, previously cited, wherein it is explained that because of confusion under previous statutes, there is now substituted the word "alderman" because they thought this made it clear that *the mayor did not have a vote*. We do not feel that a court may so freely ignore the words in the annotations.

Accordingly we hold that the ordinance in question was properly adopted under 3–7–1 and the veto was properly overridden under 3–11–19.

Appellees also contend that a motion to reconsider was necessary before the vote to override the veto.

■ When the aldermen or trustees are again in session with a veto message before them, they are, necessarily, again *considering* the same ordinance. That is all the statute requires. It does not direct that there be a vote to reconsider. In Rogers v. City of Mendota, 200 Ill App 254, there was a motion to pass the ordinance over a veto, which carried. The Court held no separate motion to reconsider was required.

■ The appellees also questioned the validity of the ordinance because it contained this section: "This ordinance shall be in full force and effect immediately after its passage and approval as provided by law."

This type of ordinance can take effect only "at the end of the current fiscal year." (3–7–1) The then current fiscal year of Romeoville ended April 30, 1968. Any attempt to make the ordinance effective sooner is void.

■ In some cases the inclusion of a void provision will make the entire ordinance void. This rule applies where it is apparent that without the void part the ordinance becomes discriminatory or otherwise has some effect which obviously was not intended.

The rule does not apply to this case. The main purpose of the majority of the board was to discontinue the office of Village Attorney. The elimination of the void

section does not defeat this main purpose, but merely defers its effect for about 8 months.

"The principal of invalidation of a whole ordinance has no application to an ordinance in which the improper matters can be clearly distinguished and separated from those properly embraced . . . the inclusion of matters distinctly beyond the competency of a municipality ought not to be treated as beclouding those as clearly within that competency . . . ." 37 Am Jur, Municipal Corporations, § 167.

The above text cites an Illinois case from early history of this State; however, a great many Illinois cases will be found digested in 24 Ill Digest, Municipal Corporations, 111(4). Of the great many cases cited, by far the larger number find the ordinance attacked to be valid notwithstanding some section therein which was held void, as being unconstitutional or otherwise illegal.

One of the cases so digested concerned an ordinance that contained a provision making it effective upon its passage, which was contrary to the provisions of what was contended to be an applicable statute. The court does not decide whether that statute did apply, because it held that question was immaterial, since, if it did apply, this would invalidate no part of the ordinance except the provision as to the time of its taking effect. Illinois Cent. R. Co. v. People, 161 Ill 244, 43 NE 1107.

For the reasons stated, we hold that the ordinance is valid but did not go into effect prior to the end of the village's fiscal year. The judgment and decrees entered in this cause are reversed and the cause remanded with directions to enter appropriate orders in accordance with this opinion.

Reversed and remanded.

ALLOY, P. J. and STOUDER, J., concur.