*In re* ARDEN RIZER.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ARDEN RIZER, Respondent-Appellant.)

First District (2nd Division)   No. 79-2328

Opinion filed August 19, 1980.

James J. Doherty, Public Defender, of Chicago (John E. Horn, Judith A. Stewart, and Mary T. Woodward, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Mark R. Davis, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

This is an appeal by the respondent, Arden Rizer, from an order of the circuit court of Cook County which found him to be in need of hospitalization for mental treatment. The sole issue presented for review is whether the trial court erred in denying respondent's motion to strike the testimony of the examining psychiatrist.

For reasons hereinafter set forth, we reverse.

On August 20, 1979, Evelyn Louise Rizer, the respondent's wife, by the Cook County State's Attorney,[1] filed, apparently pursuant to section

---

[1] Section 3—101 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—101) provides:

"The State's Attorneys of the several counties shall represent the people of the State of Illinois in court proceedings under this Chapter in their respective counties, shall attend such proceedings either in person or by assistant, and shall ensure that petitions, reports and orders are properly prepared. Nothing herein contained shall prevent any party from being represented by his own counsel."

3—701 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—701), a petition for the involuntary admission of respondent to a mental health facility. The petition alleged that the respondent was mentally ill and because of his illness was reasonably expected to inflict serious physical harm upon himself or another in the near future. The petition further alleged that respondent was in need of immediate admission to a mental health facility for the prevention of such harm. Pursuant to the petition respondent was taken into custody and detained for examination and evaluation.

In support of the petition the State submitted two physicians' certificates, one executed by a Dr. Chung and the other by a Dr. Mohan. Both Dr. Chung and Dr. Mohan had examined the respondent and had certified him to be subject to involuntary admission to a mental health facility. Both certificates contained the following printed "boilerplate" statement:

"If this examination was done for purposes of a first certificate, I personally informed the above-named individual of the purpose of this examination and that he/she did not have to speak to me, and that any statements made might be related in court as to that person's clinical condition or need for service. Additionally, if the person is asserted to be mentally retarded and dangerous I advised him/her of the right to first speak with an attorney, relative or friend."

On August 23, 1979, at the hearing on the petition, Dr. Mohan was the only examining physician who testified. His testimony, however, differed from the statement contained in the certificate executed by him. During re-cross-examination by the respondent's counsel, Dr. Mohan testified:

"Q. Doctor, did you tell him that he didn't have to talk to you?
A. No, I just introduced myself.
Q. But did you tell him that he didn't have to talk to you?
A. No.
Q. Did you tell him that any statements he makes will be disclosed at a court hearing on whether he is subject to involuntary admission?
A. Any statements he makes to me?
Q. Yes.
A. I did not tell that."

The respondent moved to strike Dr. Mohan's testimony on the grounds that Dr. Mohan had failed to give respondent the warnings contained in section 3—208 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—208). The trial court denied the motion, stating:

"This person was warned of his rights.

* * *

I don't think it necessary under the law that everybody that talks to this man has to warn him of his rights."

The respondent contends that Dr. Mohan's testimony should have been stricken because Dr. Mohan failed to comply with the provisions of section 3—208. The State maintains that Dr. Mohan's testimony was admissible because the respondent, prior to his examination by Dr. Mohan, presumptively had been notified of his rights by Dr. Chung.[2]

Section 3—208 provides:

"Examinations for certification—Statement of Rights

Whenever a petition has been executed pursuant to Section 3—507, 3—601 or 3—701, and prior to *this examination for the purpose of certification* of a person 12 or over, the person conducting this examination shall inform the person being examined in a simple comprehensible manner of the purpose of the examination; that he does not have to talk to the examiner; and that any statements he makes may be disclosed at a court hearing on the issue of whether he is subject to involuntary admission. If the person being examined has not been so informed, the examiner shall not be permitted to testify at any subsequent court hearing concerning the respondent's admission." (Emphasis supplied.)

■■ When legislation is drafted by a commission which also writes notes or comments explaining the intended purposes of the proposed draft, it is common practice for the courts to refer to the commission's comments when construing the legislation, since the thinking thus expressed is a valuable guide to legislative intent. (*Ketchmark v. Lynch* (1969), 107 Ill. App. 2d 36, 41, 246 N.E.2d 133.) Although section 3—208, as enacted, differs slightly from the proposed draft[3] submitted by the Governor's Commission for the Revision of the Mental Health Code of Illinois (Nov. 1976) (hereinafter referred to as the Commission), the Commission's comments are nonetheless a valuable guide.

---

[2] The record reflects that Dr. Chung examined the respondent on August 20, 1979, and that Dr. Mohan examined the respondent on August 22, 1979.

[3] The proposed draft provided that:

"Whenever procedures for emergency or involuntary admission have begun, including whenever a petition has been executed, and prior to *any examination for the purpose of certification* of a person 12 or over, the person conducting the examination shall inform the person being examined in a simple comprehensible manner of the purpose of the examination; that he does not have to talk to the examiner; and that any statements he makes may be disclosed at a court hearing on the issue of whether he is subject to involuntary admission. If the person being examined has not been so informed, the examiner shall not be permitted to testify at any subsequent court hearing concerning the respondent's admission." (Emphasis added.) Governor's Commission for Revision of the Mental Health Code of Illinois, Report, part One, at 38 (1976).

The Commission at page 38 summarized section 3—208 as follows:

"*Summary*: Extends the privilege against self-incrimination to persons 12 or over undergoing certification examinations. The person conducting an examination of the respondent cannot testify at a subsequent court hearing unless he informed the respondent of the purpose of the examination, that the respondent is not obligated to speak to him, and that he may subsequently disclose in court any statements made."

In addition the Commission commented at page 38:

"Many examiners in the private sector inform respondents of the purpose of the mental examination and that their verbal participation is not required. Experience in the public and private sectors has shown that application of the privilege against self-incrimination does not seriously impair the State's ability to achieve the valid objectives of civil commitment. It should be stressed that this section will not nullify the legality of a certificate executed by an examiner who has not given the required warning, but only prevents his testifying in court."

The State emphasizes that the proposed draft required the warnings be given prior to "any examination for the purpose of certification" whereas section 3—208 as enacted requires that the warnings be given prior to "this examination for the purpose of certification." The State argues that the use of the term "this examination" in place of the term "any examination" is a strong indication that only the first of the two required examinations was to be affected by section 3—208. This suggested construction is supported by neither legislative intent nor logic. Had the legislature intended that only the first examination be governed by section 3—208, the statute could easily have been amended to read "the first examination."

■■ Whenever a petition has been executed pursuant to section 3—701[4], the person alleged to be subject to involuntary admission "shall be examined separately by a physician, or clinical psychologist, or qualified examiner *and* by a psychiatrist." (Emphasis added.) (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—703.) Two separate examinations are obviously

---

[4] Section 3—701 provides:

"(a) Any person 18 years of age or older may execute a petition asserting that another person is subject to involuntary admission. The petition shall be prepared pursuant to paragraph (b) of Section 3—601 and shall be filed with the court in the county where the respondent resides or is present.

(b) The court may inquire of the petitioner whether there are reasonable grounds to believe that the facts stated in the petition are true and whether the respondent is subject to involuntary admission. The inquiry may proceed without notice to the respondent if the petitioner alleges that an emergency exists such that immediate hospitalization is necessary." Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—701.

required. In our opinion it is to each of these separate examinations that the "this examination" language refers. Moreover, section 3—208 provides that *"the person conducting this examination shall inform* the person being examined in a simple comprehensible manner of the purpose of the examination; that he does not have to talk to the examiner; and that any statements he makes may be disclosed at a court hearing on the issue of whether he is subject to involuntary admission. If the person being examined has not been so informed, the examiner shall not be permitted to testify at any subsequent court hearing concerning the respondent's admission." (Emphasis added.) Thus we cannot logically conclude that section 3—208 requires only the first of the two examiners to give the statutory warnings.

■■ The State also argues that requiring both examiners to give the statutory warnings would unduly interfere with the therapist-patient relationship. The Commission responded to this argument in their comment to section 3—208 at page 38:

> "These disclosure requirements apply solely to instances where the immediate purpose of the examination is certification; they do not apply to the traditional therapist-patient relationship nor do they preclude the therapist's testimony if the disclosure is made when the issue of involuntary admission becomes apparent."

In the case at bar, Dr. Mohan was merely the respondent's examiner, not the respondent's therapist. As such no traditional therapist-patient relationship existed.

The psychiatric examination is highly intrusive. It seeks to obtain information concerning an individual's inner-most thought processes and emotions and to elicit accounts of personal conduct. Such a significant intrusion justifies the warnings required by section 3—208.

■■ For the foregoing reasons we conclude that the testimony of Dr. Mohan should have been stricken.

■■ Section 3—807 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—807) provides in pertinent part:

> "No respondent may be found subject to involuntary admission unless at least one psychiatrist or clinical psychologist who has examined him testifies in person at the hearing * * *."

Because the testimony of Dr. Mohan should have been stricken and because no other psychiatrist or clinical psychologist who had examined the respondent testified at the hearing, the respondent was improperly found subject to involuntary admission.

Reversed.

STAMOS and HARTMAN, JJ., concur.