MARTHA HESS *et al.*, Plaintiffs-Appellants, v. I.R.E. REAL ESTATE IN-
COME FUND, LTD., *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—90—0107, 1—90—0177 through
1—90—0185, 1—90—0373, 1—90—0374 cons.

Opinion filed February 26, 1993.—Rehearing denied April 13, 1993.

Roland W. Burris, Attorney General, of Springfield (Joseph M. Claps, Michael J. Ditore, and Thomas L. Ciecko, Assistant Attorneys General, of Chicago, of counsel), and Kevin M. Forde, Ltd. (Kevin M. Forde and Mary Anne Mason, of counsel), Beeler, Schad & Diamond, P.C. (Stephen B. Diamond, Lawrence W. Schad, David J. Philipps, and William H. London, of counsel), and Fishman & Merrick, P.C. (David A. Genelly, of counsel), all of Chicago, for appellants.

Gardner, Carton & Douglas (Michael J. Koenigsknecht and Karen M. Dorff, of counsel), Jenner & Block (Keith F. Bode, James L. Thompson, and

Charles B. Sklarsky, of counsel), and Arnstein & Lehr (Carol McHugh, of counsel), all of Chicago, for appellees.

JUSTICE COUSINS delivered the opinion of the court:
The consolidated appeals before this court involve class actions. Twelve consolidated appeals arose from a violation of section 12C of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1985, ch. 121½, par. 137.1 et seq.), which requires all persons who sell securities to register with the Secretary of State. Each of the defendants sold securities to at least one of the plaintiffs through unregistered brokers.

Plaintiff Hess dealt only with defendant I.R.E Real Estate Income Fund, Ltd. (IRE). On May 20, 1988, Hess brought a class action on behalf of all persons who purchased securities through the unregistered brokers against 16 defendants who used the services of the unregistered brokers. On November 1, 1988, the trial court dismissed the class allegations due to lack of standing.

Subsequently, Hess joined additional plaintiffs who purchased securities from each of the other defendants and filed an amended class action complaint on November 29, 1989. On April 28, 1989, the trial court again dismissed the class allegations due to lack of standing.

Finally, beginning on May 17, 1989, Hess and the other 11 plaintiffs filed individual complaints against the defendants. On December 15, 1989, the trial court ordered certain defendants to repurchase shares from those plaintiffs, including Hess, who had filed individual claims within the three-year limitations period. As to the remaining plaintiffs who had not filed claims within three years, the trial court held that the limitations period was not tolled during the pendency of Hess' class action claims, and dismissed the claims as untimely. We affirm in part and reverse in part.

BACKGROUND
■ Under Illinois law, all persons who sell securities are required to register with the Secretary of State. (Ill. Rev. Stat. 1985, ch. 121½, par. 137.8A.) The sale of securities by unregistered brokers constitutes a violation of the Illinois Securities Law of 1953 and gives the purchaser the right to rescind the sale. (Ill. Rev. Stat. 1985, ch. 121½, pars. 137.12C, 137.13A.) Rescission is the only remedy available for this type of violation, however, and compliance with the conditions set forth in the statute is a prerequisite to recovery. Before a purchaser can bring a cause of action under the Securities Law, he must give notice to the seller of his election to rescind the sale. Ill. Rev. Stat. 1985, ch. 121½, par. 137.13B.

This litigation arises out of the sale of securities in the form of interests in 16 separate real estate limited partnerships to approximately 1,600 people during the years 1985 and 1986. The securities were issued by the defendants, among others, and sold to the plaintiffs through one or more of the following brokers: Earl Dean Gordon, Kenneth F. Boula, Financial Concepts Ltd., and KFB Securities, Inc. Gordon and Boula owned and controlled both Financial Concepts and KFB Securities.

In August of 1986, the Illinois Secretary of State entered an order of prohibition against Gordon and Boula. The order found that Gordon and Boula had violated the Illinois Securities Law by selling securities without being properly registered and prohibited Gordon and Boula from continuing to sell securities in this illegal manner.

In 1986, prior to the date the Secretary of State began investigating Gordon and Boula, Hess purchased a security interest in *one* of the defendants, IRE, through these brokers. On May 20, 1988, Hess brought suit on behalf of herself and all others who purchased securities from the unregistered brokers against 16 defendants. The four-count complaint alleged a violation of the Illinois Securities Law, common law fraud, a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*), and a breach of fiduciary duty. Before any hearing on the merits, the complaint was amended twice to correct technical matters.[1] All defendants moved to dismiss Hess' second amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) for lack of standing and failure to state a cause of action.

On November 1, 1988, the trial court dismissed all claims except Hess' individual claim against IRE. The trial court dismissed the class claims primarily because it found that Hess had no standing to bring suit against defendants with whom she had never dealt. With respect to count I, the court also held that Hess could not rescind on behalf of the members of the class she purported to represent. Finally, the court held that Hess had failed to state a cause of action in counts II through IV. The court granted Hess leave to amend the complaint.

On November 29, 1988, Hess filed her third amended complaint. In an effort to cure the standing problem, Hess joined as additional representatives at least one plaintiff who had made a purchase from

---

[1]The first amendment added exhibits. The second corrected a misnomer of one of the parties.

each of the defendants. The third amended complaint contained a single count which alleged a violation of the Illinois Securities Law; the claims for fraud and breach of fiduciary duty were dropped. Again, all defendants moved to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure on the ground that Hess lacked the ability to make an election to rescind on behalf of others and, therefore, was unable to represent the members of the purported class.

On April 28, 1989, the trial court dismissed the class claims in the third amended complaint, but allowed Hess' individual claim against IRE. The court held that the right to rescind a sale under the Illinois Securities Law is a personal right and, therefore, Hess was unable to represent the members of the purported class. The trial court agreed to stay its order for five days to allow Hess to bring a motion to appeal under Supreme Court Rule 308 (134 Ill. 2d R. 308).

Hess did not attempt to appeal from the court's dismissal of her third amended complaint, but instead brought a motion for leave to file a fourth amended complaint on May 18, 1989. The motion also sought leave to intervene on behalf of 145 persons who also purchased interests in defendant IRE.

The fourth amended complaint did not contain a prayer for class relief; plaintiff sought only individual relief against IRE for herself and the intervenors. The complaint contained three counts. Like the third amended complaint, the plaintiffs alleged a violation of the Illinois Securities Law. In addition, the plaintiffs also purported to resurrect the claims for breach of fiduciary duty and consumer fraud that were eliminated from the third amended complaint.

On May 17, 1989, various additional plaintiffs began to file individual actions against the defendants. A total of 11 lawsuits were filed in addition to the Hess suit. Each of these individual suits contained the same three claims for relief as the Hess complaint. Beginning on May 22, 1989, hundreds of other persons who purchased interests in the defendant partnerships sought leave to intervene in the pending individual lawsuits.

On August 28, 1989, the trial court granted Hess leave to file a fourth amended complaint. The court also granted leave to intervene for all those who wished to intervene in the various lawsuits.

On August 15, 1989, all plaintiffs moved to consolidate the individual cases pursuant to section 2—1006 of the Code of Civil Procedure. On September 28, the trial judge denied the motion to consolidate, but ordered that all cases should be transferred to the same trial judge for purposes of resolving common questions of law and fact.

All defendants moved to dismiss the individual lawsuits on the grounds that the claims were untimely and failed to state a cause of action under sections 2—619 and 2—615 of the Code of Civil Procedure. With respect to the IRE defendants (appeals 1—90—0107, 1—90—0177, 1—90—0182, 1—90—0183, 1—90—0184, 1—90—0185) and the Equitec defendants (appeals 1—90—0178, 1—90—0180, 1—90—0181), the trial court held that: (1) the defendants were ordered to rescind and pay the amount due under section 13A of the Illinois Securities Law to any plaintiff who brought suit within the three-year limitations period provided in the statute; (2) the court reserved jurisdiction to determine whether plaintiffs in paragraph one were entitled to attorney fees; (3) with the exception of the plaintiffs listed in paragraph one, counts I, II, and III of the complaint were dismissed with prejudice pursuant to section 2—619 of the Code of Civil Procedure as untimely; and (4) counts II and III were dismissed with prejudice pursuant to section 2—615 of the Code of Civil Procedure for failure to state a cause of action.

With respect to the Balcor defendants (appeal 1—90—0179), the court held that the complaint was dismissed pursuant to section 2—619 as untimely and counts II and III were dismissed under section 2—615 for failure to state a cause of action. As to the Southmark defendants (appeals 1—90—0373, 1—90—0374), the court held that count I was dismissed under section 2—619 as untimely and counts II and III were dismissed under section 2—615 for failure to state a cause of action.

All plaintiffs have filed timely notices of appeal. Plaintiffs in the Hess case appeal from the trial court's dismissal of the second, third and fourth amended complaints. These plaintiffs assert that the trial court improperly dismissed the class claims in the second and third amended complaints, based on its erroneous conclusion that a class representative cannot give notice of the election to rescind a sale on behalf of another. Plaintiffs concede that Hess lacked standing to sue defendants with whom she had never dealt, but maintain that the joinder of the additional plaintiffs in the third amended complaint cured the standing problem.

All plaintiffs argue that the trial court incorrectly dismissed the claims as untimely because the filing of the initial class complaint tolled the statute of limitations. Finally, all plaintiffs assert that the trial court improperly dismissed counts II and III under section 2—615 because they have stated a valid claim for breach of fiduciary duty and violation of the Consumer Fraud Act.

On June 22, 1990, Hess entered into a settlement agreement with IRE in which she released IRE from all claims, other than attorney fees, that she had against this defendant. In December of 1991, all defendants filed motions with this court to strike and dismiss the Hess appeal, No. 1—90—0107, as moot. This court held that the motion would be taken with the case.

The Attorney General filed an *amicus curiae* brief in support of the position taken by the plaintiffs.

OPINION

The following issues are presented by this appeal: (1) whether both Hess and the intervenors have waived the right to object to the trial court's dismissal of the class claims contained in the second and third amended complaints, due to their failure to replead these allegations or stand on their prior complaint; (2) whether Hess' claims have been rendered moot by her settlement with and release of the only defendant with whom she dealt; (3) whether the filing of the original class complaint on May 20, 1988, tolled the limitations period for all or some of the plaintiffs who would have been class members if the suit had continued as a class action; and (4) whether the claims for breach of fiduciary duty and consumer fraud were properly dismissed.

I

The defendants contend that Hess has waived the right to appeal from the trial court's dismissal of the class claims present in the second and third amended complaints by filing a fourth amended complaint which sought only individual relief. We disagree.

On March 30, 1990, prior to the filing of any briefs with this court, the defendants filed a motion to strike and dismiss the class claims in the second and third amended complaints. The defendants asserted that Hess waived the right to appeal from the trial court's dismissal of these claims when she filed her fourth amended complaint which neither realleged, nor incorporated by reference, the class claims, but instead sought only individual relief. On April 30, 1990, this court denied the defendants' motion to strike and dismiss.

In their briefs, the defendants again assert that Hess waived the right to object to the dismissal of the class claims by filing the fourth amended complaint. Initially, plaintiffs argue that this issue has already been disposed of through this court's denial of the defendants' motion to dismiss. Plaintiffs assert that by denying the defendants' motion to dismiss, this court held that the class claims were properly before this court, and that our decision became the law of the case.

■ We disagree. The denial of a motion to dismiss made in the reviewing court does not bind the court. Such rulings are not unassailable, but rather are open to reconsideration. (*People v. Nichols* (1986), 143 Ill. App. 3d 673, 676; *Schwind v. Mattson* (1974), 17 Ill. App. 3d 182, 187.) Therefore, the issue of whether Hess has waived the right to contest the dismissal of the class claims is properly before this court.

■ It is a well-established principle in Illinois that a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints. (*Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 153.) If an amendment is complete in itself, and does not refer to or adopt the prior pleading, the prior pleading ceases to be a part of the record for most purposes. *Foxcroft*, 96 Ill. 2d at 154.

Plaintiffs argue that the waiver rule should not apply to them for two reasons. First, plaintiffs argue that their class claims should not be deemed waived because they continued to rely on and refer back to these claims. Second, plaintiffs assert that the waiver rule is inapplicable to the dismissal of class allegations.

■ Plaintiffs are correct in asserting that where an amendment refers back to or adopts prior pleadings the prior pleadings are not deemed waived. (See *Foxcroft*, 96 Ill. 2d at 154.) We find, however, that the mere mention of the prior pleadings in an amendment is not sufficient to preclude waiver of the prior pleadings. As defendants correctly point out, the only reason that the fourth amended complaint referred to the prior class claims was for the purpose of alleging that the class claims tolled the limitations period for the members of the purported class. It is our view that there is a distinct difference between class claims still being "at issue" and their historical existence being discussed in reference to a then current issue, the tolling question. The fourth amended complaint contains no indication of plaintiff's intention to continue pursuing the class claims for relief. Therefore, we conclude that the fourth amended complaint did not refer back to the prior pleadings in a manner sufficient to keep these pleadings alive.

Plaintiffs next contend that the waiver rule established in *Foxcroft* is inapplicable to class allegations. We agree.

■ The dismissal of class allegations is not a final and appealable order, but rather an interlocutory order. (*Levy v. Metropolitan Sanitary District* (1982), 92 Ill. 2d 80, 83.) Interlocutory orders become reviewable only upon appeal from a final judgment or through the provisions of Supreme Court Rule 308. (*Levy*, 92 Ill. 2d at 83.) The

nature of an interlocutory order allows the trial court to amend or change the order at any time before a final judgment is rendered. Because the trial court was free to amend or change its order dismissing Hess' class allegations at any time prior to final judgment, the class allegations were not abandoned when Hess filed the fourth amended complaint seeking only individual relief. Furthermore, we find that it was not necessary to replead the class allegations which were dismissed via an interlocutory ruling in order to preserve them for review. The appeal of a final order draws all previous nonfinal orders into question. (See *American International Hospital v. Chicago Tribune Co.* (1983), 120 Ill. App. 3d 435, 438-39.) Accordingly, we find that the waiver rule is inapplicable to the dismissal of the class allegations.

II

The defendants next contend that Hess' settlement and release of her claims against IRE, the only defendant with whom she dealt, render appeal No. 1—90—0107 moot. We agree.

On June 22, 1990, Hess and a number of other plaintiffs who had intervened in the Hess case entered into a settlement agreement with IRE. Hess and the intervenors who settled agreed to release IRE from all claims they had against IRE, except attorney fees. In December of 1991, all defendants filed a motion with this court to strike and dismiss the Hess appeal, No. 1—90—0107, as moot. This motion was taken with the case.

In case No. 1—90—0107, the plaintiffs appeal from the trial court's dismissal of the plaintiff's second, third, and fourth amended complaints. In both the second and third amended complaints, Hess sought relief on behalf of herself and an alleged class of others who were similarly situated; in both cases the class claims were dismissed. In the fourth amended complaint, Hess and the plaintiffs who intervened sought only individual relief against IRE in three counts. The court granted Hess the relief asked for in count I and dismissed counts II and III for failure to state a cause of action. The court reserved ruling on the issue of attorney fees until after this appeal was decided.

■ A case may become moot when, pending the decision on appeal, events occur which render it impossible for the reviewing court to grant relief to either party. (*In re Marriage of Landfield* (1987), 118 Ill. 2d 229, 232.) Illinois courts do not issue advisory opinions and should not resolve questions merely for the sake of setting a precedent to govern potential future cases. *People v. Hiem* (1989), 182 Ill. App. 3d 1075, 1077.

With respect to the fourth amended complaint, the claims of both Hess and the intervenors who settled are clearly moot. Hess and the intervenors sought only individual relief from IRE, and they later released all of their claims against IRE. Since neither Hess, nor the intervenors who settled, have any claim against IRE upon which this court could grant relief, their appeal from the fourth amended complaint is moot. See *Landfield*, 118 Ill. 2d at 232.

The defendants also argue that Hess' appeal from the dismissal of the class claims contained in the second and third amended complaints is moot. Defendants point out that Hess, the sole named class representative, has settled the only claim she possessed. Furthermore, since no remaining class member has sought to substitute himself or herself as the named class representative, defendants urge that dismissal of the appeal is appropriate.

The law supports the defendants' position. In *Wheatley v. Board of Education of Township High School District 205* (1984), 99 Ill. 2d 481, 486-87, the Illinois Supreme Court held that once a representative plaintiff is granted the requested relief, he or she is no longer a member of the class because his or her interests have ceased to be consistent with the interests of the other class members. Moreover, a class which lacks a representative cannot be certified. Therefore, if no remaining member of such a class has sought to substitute himself or herself as a named representative, the appropriate disposition of the claim is dismissal. *Wheatley*, 99 Ill. 2d at 487.

Hess argues that the appeal is not moot because she has not yet received all of the relief for which she has asked, but instead continues to have a claim for attorney fees against IRE. Hess argues that her remaining claim for fees constitutes a continuing stake in the controversy which precludes a finding of mootness.

We are unpersuaded. The claim for fees does not have a sufficient nexus to the substantive controversy to justify allowing Hess to continue to litigate the class claims. Our conclusion is bolstered by the facts of this case. The question of attorney fees would have been resolved below, but for the actions of plaintiff's counsel. Counsel specifically asked the trial court to reserve ruling on the issue of attorney fees until after the appeal was decided. The doctrine of mootness cannot turn upon counsel's decision to reserve or not reserve the issue of attorney fees.

We are compelled to follow our supreme court's holding in *Wheatley*. Accordingly, we conclude that the class claims asserted by Hess in the second and third amended complaints are moot. Likewise, the in-

dividual claims of both Hess and the intervenors who settled are moot.

Although we conclude that the class claims for relief are moot, we are not prevented from addressing the trial court's treatment of these claims where it becomes necessary to resolve the remaining issues before us. As discussed above, the dismissal of class claims constitutes an interlocutory order (*Levy*, 92 Ill. 2d at 83), and all interlocutory orders are called into question upon the appeal from a final judgment. *American International Hospital*, 120 Ill. App. 3d at 438-39.

### III

Our conclusion that the claims brought by Hess and certain intervenors have become moot does not dispose of the entire appeal. At least 172 additional intervenors in the Hess case did not settle and remain uncompensated. Similarly, the majority of the parties to the other 11 appeals before us have received no relief.

The trial court dismissed the claims of these plaintiffs because the claims were not filed within the three-year limitations period provided in the Illinois Securities Law. The trial court rejected the plaintiffs' argument that the limitation period was tolled during the pendency of Hess' class action claims; the trial court refused to apply the class action tolling doctrine adopted by the Illinois Supreme Court in *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320.

Instead, the trial court accepted the defendants' arguments that the class action tolling doctrine was inapplicable because: (1) the class claims were patently defective; and (2) the limitations period was jurisdictional:

> "This Court feels that the people in issue were not members of any class, never could be any members of any class, but even if that were—if it were true that *Steinberg* did control, this Court feels in construing the law and all the various cases that have been cited by all parties that there is no tolling because it's jurisdictional. So that will be the order of this Court."

The trial court held, in part, that the class action tolling doctrine was inapplicable because the class claims were patently defective. The trial court's holding that class action tolling was not available is inextricably intertwined with its conclusion that the class claims were defective. Therefore, we find it necessary to consider the trial court's finding that the class claims were patently defective before we reach the tolling issue.

On November 1, 1988, the trial court dismissed the class claims in the second amended complaint. The trial court held that these class

claims were defective for two reasons: (1) Hess lacked standing to sue defendants who caused her no injury; and (2) Hess lacked the ability to rescind the sales transactions on behalf of others.

On November 29, 1988, Hess sought to cure the standing problem by filing a third amended complaint which added at least one plaintiff who dealt with each defendant. On April 28, 1989, the trial court dismissed the class allegations in the third amended complaint on the ground that Hess could not give notice of an election to rescind the security transaction on behalf of others and, therefore, could not represent the class members.

In their brief, plaintiffs concede that the trial court correctly dismissed the class claims in the second amended complaint on the ground that Hess lacked standing to sue defendants who caused her no injury:

> "This issue became moot when plaintiffs cured the standing problem found by the court. Despite the fact that *plaintiffs have not raised the standing issue on appeal*, defendants have nevertheless addressed this issue in their briefs ***." (Emphasis added.)

We agree with the trial court's finding that Hess had no standing to sue defendants with whom she never dealt. (See *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 254.) However, we disagree with the trial court's conclusion that the election to rescind is a personal right which cannot be exercised by a putative class representative.

The Illinois Securities Law of 1953 does not address this issue, and we have found no case on point. Therefore, the resolution of this issue must turn on the purposes and policies behind both the Illinois Securities Law and the class action statute.

■ ■ Class actions are now creatures of statutory law and they may be brought in any court. (Ill. Rev. Stat. 1985, ch. 110, par. 2–801; *In re Application of Rosewell* (1992), 236 Ill. App. 3d 165, 169.) The purpose of a class action suit is to allow a representative party to pursue the claims of a large number of persons with like claims. (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 14.) It does not contemplate or necessitate the appearance of absent parties. In fact, the class action device is predicated on the inability of the court to entertain the actual appearance of all members of the class, as well as the impracticality of having each member prosecute his individual claim. *Miner*, 87 Ill. 2d at 14.

Securities fraud cases are uniquely suited to class action treatment because the claims of individual purchasers are often too small

to merit separate law suits. In the context of securities litigation, the class action serves not only as a device to litigate similar claims, but also as an efficient deterrent against wrongdoing. *Ridings v. Canadian Imperial Bank of Commerce Trust Co.* (N.D. Ill. 1982), 94 F.R.D. 147, 150.

■ The Illinois Securities Law regulates the sale and distribution of securities within the State. The purpose of the Illinois Securities Law (Act) is to protect *purchasers*. (See *Meihsner v. Runyon* (1960), 23 Ill. App. 2d 446, 456; *Group Securities, Inc. v. Carpentier* (1959), 19 Ill. App. 2d 513, 524.) The Act is paternalistic and should be liberally construed to better protect the public from deceit and prevent fraud in the sale of securities. *Meihsner*, 23 Ill. App. 2d at 456.

Section 12 of the Act enumerates a list of acts which constitute a violation of the Act and provides in relevant part:

"§12. Violation. It shall be a violation of the provisions of this Act for any person:

\* \* \*

C. To act as a dealer, salesperson or investment advisor unless registered as such, where such registration is required, under the provisions of this Act." Ill. Rev. Stat. 1985, ch. 121½, par. 137.12.

Section 13 of the Illinois Securities Law makes civil remedies available to the purchasers of securities sold in violation of the statute, and sets forth the conditions precedent to recovery. Section 13 provides in relevant part:

"§13. Civil remedies. A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and the issuer \* \* \* shall be \* \* \* liable to such purchaser for (1) the full amount paid, together with interest \* \* \* upon tender to the seller or into court of the securities sold \* \* \* \* \* \*

B. Notice of any election provided for in subsection A of this Section shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought \* \* \*.

\* \* \*

D. No action shall be brought for relief under this Section \* \* \* after 3 years from the date of sale \* \* \*." Ill. Rev. Stat. 1985, ch. 121½, par. 137.13.

The defendants contend that Hess could not exercise the right to rescind on behalf of others because she would be forcing the absent plaintiffs to give up their securities despite the fact that some plaintiffs may not want to do so. The defendants argue that the availability of the right to opt out of the class did not provide enough protection for the absent defendants. The defendants contend that there is simply no support in the law for a procedure which first deprives a citizen of his property and then requires him to resort to the affirmative action of "opting out" of a class in order to recover his investment.

The plaintiffs argue that the defendants misunderstand the rescission procedure; they maintain that automatic rescission of the class members' investments will not occur merely because a class representative gives notice of an election to rescind on behalf of the class. Plaintiffs argue that after notice of an election to rescind is given, the defendants would have the opportunity to make an *offer* to repurchase the plaintiff's securities. Any plaintiff who wishes to retain his securities could simply refuse the defendant's offer. Presumably, the same procedure would take place if the defendants did not voluntarily offer to rescind, but instead, had a judgment entered against them after a trial.

We agree with the plaintiffs. There is nothing in the language of the statute to suggest that rescission is automatically effected upon the giving of *notice* of an election to rescind. After a careful reading of the statute, it is our view that the act of giving notice of an election to rescind brings about the *right* to rescission, but does not bring about the actual rescission.

Under the securities statute, rescission cannot take place until the purchaser actually tenders the security to the seller or the court. (Ill. Rev. Stat. 1985, ch. 121½, par. 137.13(A)(1).) While it is true that the tender of securities must be individually accomplished by each member of the class, the fact that absent class members have not yet tendered their securities does not preclude the maintenance of a class action on their behalf. The securities statute establishes no time limit upon tender; it may be made before trial or during trial. *Bultman v. Bishop* (1983), 120 Ill. App. 3d 138, 142-43.

■ Because it is the act of tendering the securities, and not the act of giving notice, which effectuates a rescission, putative members of a class would not be deprived of their investment if a class representative gives notice on their behalf. Furthermore, we find that the purpose of the statute, which is to protect purchasers, will be better served by allowing a representative who has standing to give notice

of an election to rescind on behalf of the members of the class. Accordingly, we hold that the trial court erred in concluding that a class representative could not exercise the right to rescind on behalf of the putative class members.

We further find that subject to the limitations period provided in the Illinois Securities Law, and the requirements set forth in the class action statute, certain class actions might have been maintained. In the second amended complaint, Hess filed class claims on behalf of herself and all others who purchased securities from the unregistered brokers against 16 defendants. Because Hess did not have standing to sue any of the defendants except IRE, she could not represent persons who made purchases from these defendants. However, Hess did have standing to sue IRE and, therefore, she could have maintained a class action on behalf of all of the purchasers of IRE.

In the third amended complaint, plaintiffs attempted to cure the standing problem by joining 19 additional representatives; at least one representative dealt with each of the defendants. We find that if any of these individual representatives had filed within the limitations period, they might have maintained a class on behalf of those persons who purchased securities from the same defendants, subject to the requirements of the class action statute.

## IV

We turn now to the tolling questions raised by this appeal. The trial court held that the filing of the initial class action could not toll the statute of limitations as to any plaintiffs other than Hess for two reasons. First, the court held that the class action was patently defective and, therefore, the class action tolling rule was not applicable. Second, the court found that the limitations period contained within the Illinois Securities Law was jurisdictional and, therefore, could not be tolled.

We address the jurisdictional basis for denying tolling first. We assume for the purpose of this decision that the limitations period contained in the Illinois Securities Law is jurisdictional.

In *American Pipe & Construction Co. v. Utah* (1974), 414 U.S. 538, 38 L. Ed. 2d 713, 94 S. Ct. 756, the United States Supreme Court established the class action tolling rule. This rule provides that the filing of a Federal class action tolls the statute of limitations as to all asserted members who would have been parties had the suit been permitted to continue as a class action. (*American Pipe*, 414 U.S. at 554, 38 L. Ed. 2d at 727, 94 S. Ct. at 766.) The tolling doctrine applies to plaintiffs who intervene after the denial of class certification

as well as those who later file individual complaints. (*Crown, Cork & Seal Co. v. Parker* (1983), 462 U.S. 345, 354, 76 L. Ed. 2d 628, 636, 103 S. Ct. 2392, 2397-98.) In *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 342, the Illinois Supreme Court adopted, without discussion, the class action tolling doctrine established in *American Pipe.*

■■■ As both parties acknowledge, there is no authority in Illinois which specifically addresses the issue of whether the pendency of a class action can toll a jurisdictional time limit. Although there is authority in Illinois for the proposition that a jurisdictional limitation is not subject to *equitable* tolling (see, *e.g., Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 209-10; *Bradford v. Soto* (1987), 159 Ill. App. 3d 668, 674-75), we believe that there is a fundamental distinction between equitable tolling and class action tolling. In a class action, the putative class representative has satisfied the prerequisites to suit, *including filing within the applicable limitations period*; tolling is applied to preserve the rights of absent class members during the pendency of certification proceedings. In contrast, equitable tolling seeks to excuse *untimely* filing by an individual plaintiff and is generally applicable where the plaintiff has been induced or tricked by the defendant's conduct into allowing the filing deadline to pass. Because the purpose behind class action tolling is different from the purpose behind equitable tolling, we find that the cases concerning equitable tolling are inapposite.

■■■ In *Steinberg,* the Illinois Supreme Court held that the filing of a class action tolls the statute of limitations as to all asserted members who would have been parties, had the suit been permitted to continue as a class action. (*Steinberg,* 69 Ill. 2d at 342.) The supreme court made no distinction as to ordinary statutes of limitation and jurisdictional limitations. Furthermore, we can find no logical reason why the filing of a class complaint should toll the statute of limitations for claims recognized at common law, but not for claims created pursuant to statute. Accordingly, we hold that a jurisdictional limitation period may be tolled by the filing of a class action complaint.

V

We now turn to the trial court's holding that the defective nature of the class claims rendered the class action tolling doctrine inapplicable. The trial court held that the class claims were defective for two reasons: (1) Hess lacked standing to sue defendants with whom she had never dealt; and (2) Hess and the other putative representatives lacked the ability to rescind the sales transactions on behalf of others.

As discussed previously, we feel that the trial court erred in holding that Hess and the other putative representatives could not exercise the right to rescind on behalf of others. Therefore, this basis does not support the trial court's finding that the class action tolling doctrine was inapplicable. The trial court also held that the class claims in the second amended complaint were defective because the plaintiff lacked standing. We now address the applicability of the class action tolling doctrine to class claims dismissed for lack of standing.

It is well established that upon the filing of a class action, the statute of limitations is normally tolled for all putative plaintiffs. See, e.g., *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 38 L. Ed. 2d 713, 94 S. Ct. 756; *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320.

In *American Pipe*, the Supreme Court established the class action tolling rule in order to preserve the policies underlying class actions. Without this rule, class actions would be deprived of "the efficiency and economy of litigation which is a principal purpose behind the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable." *American Pipe*, 414 U.S. at 553, 38 L. Ed. 2d at 726, 94 S. Ct. at 766.

At the same time, the Supreme Court found that the tolling rule would not infringe upon the interests protected by the statute of limitations:

> "[S]tatutory limitation periods are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. ***' The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,' [citation] are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the [limitation] period ***, the defendants have the essential information necessary to determine both the subject matter and the size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors." *American Pipe*, 414 U.S. at 554-55, 38 L. Ed. 2d at 727, 94 S. Ct. at 767-77.

Although the class tolling rule is necessary to protect the important policy interests behind class actions, it also presents the potential for abuse. In his concurring opinion in *American Pipe*, Justice Blackmun gave the following warning, "Our decision *** must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." (*American Pipe*, 414 U.S. at 561, 38 L. Ed. 2d at 731, 94 S. Ct. at 770 (Blackmun, J., concurring).) It is with these concerns in mind that we examine the arguments of the parties before us.

Defendants have argued both to the trial court and on appeal that the general rule of class tolling should not be applied when the class action is dismissed because the plaintiff lacked standing. The defendants cite several cases from other jurisdictions which stand for the principle that tolling is improper when the representative lacks standing to bring the class action. See, *e.g.*, *In re Elscint, Ltd. Securities Litigation* (D. Mass. 1987), 674 F. Supp. 374; *Cunningham v. Insurance Co. of North America* (Pa. 1987), 530 A.2d 407.

In response, plaintiffs argue that tolling is proper in cases where the class representative had standing with respect to *some*, but not all of the defendants. Plaintiffs also cite cases from other jurisdictions which support their contentions. See, *e.g.*, *Elscint*, 674 F. Supp. at 378-79; *Rose v. Arkansas Valley Environmental & Utility Authority* (W.D. Mo. 1983), 562 F. Supp. 1180; *Haas v. Pittsburgh National Bank* (3d Cir. 1975), 526 F.2d 1083.

We note initially that the Illinois courts have not addressed this issue. Therefore, we turn to law of other jurisdictions for guidance in this matter.

Our review of the authorities in other jurisdictions has revealed the existence of several general rules of law. First, we find that there is no *per se* rule concerning the dismissal of class claims which lack standing; the fact that a class action is dismissed because the class representative lacks standing does not automatically prevent the application of the *American Pipe* tolling rule. (See, *e.g.*, *Rose v. Arkansas Valley Environmental & Utility Authority* (W.D. Mo. 1983), 562 F. Supp. 1180.) Instead, each case should be decided on a case-by-case basis. In each case, the court should weigh the interests that will be served by the application of the tolling rule against the potential for abuse.

We find that the facts before us are analogous to the situation presented in *Cunningham v. Insurance Co. of North America* (Pa. 1987), 530 A.2d 407. In *Cunningham*, an initial class action was filed

against 31 insurance companies, including the Insurance Company of North America (INA). The representative did not have standing to represent either INA or 29 other defendants. Therefore, the court dismissed the class claims against INA and all other defendants except for the one that the representative actually dealt with.

Subsequently, the Cunninghams brought a second class action against INA. This action was brought after the statute of limitations had run. The Cunninghams argued that because they were putative members of the prior class action against INA, the statute of limitations had been tolled during the pendency of the prior class action.

The supreme court of Pennsylvania disagreed. The court held that the principle of class action tolling was not applicable where the lack of standing was apparent upon the face of the complaint. (*Cunningham*, 530 A.2d at 411.) The complaint stated that the representative plaintiff was not an insured of INA. Furthermore, the complaint did not allege that any actions attributable to INA caused injury to the representative plaintiff. The supreme court concluded that under these circumstances, it could not have been more apparent that the requirements of standing were not satisfied. *Cunningham*, 530 A.2d at 409.

The facts in the case at bar are nearly identical to the facts presented in *Cunningham*. Hess, like the representative in Cunningham, brought an initial class action against 16 defendants, but only had standing with respect to one defendant. Subsequently, purchasers from 11 of the defendants who were dismissed from the class action filed individual actions. These plaintiffs argued that the limitations period should have been tolled during the pendency of the initial class action. We disagree.

As in *Cunningham*, Hess' lack of standing toward 15 of the 16 defendants was apparent on the face of her complaint. The complaint stated that Hess purchased her security interest from IRE Real Estate. There were no allegations that Hess had ever dealt with any other defendant to the lawsuit. Under these circumstances, it was not reasonable for the absent plaintiffs to rely on the class action suit to protect their rights.

At this point we note that the *Cunnningham* court did not discuss a relevant case from the Third Circuit, *Haas v. Pittsburgh National Bank* (3d Cir. 1975), 526 F.2d 1083. A contrary result was reached in *Haas* on the basis of somewhat different facts.

In *Haas*, the representative plaintiff brought a class action against three banks to challenge their methods of computing credit card interest rates. The representative plaintiff held a credit card

from two of the three banks; she did not possess a credit card from defendant Equibank. However, the trial court granted the plaintiff representative status as to all three banks. In light of subsequent decisions from higher courts, the district court determined that certification was improper as to Equibank because the plaintiff did not have standing to sue this defendant. (*Haas*, 526 F.2d at 1095.) The trial court allowed the plaintiffs to amend the complaint to add a nominal plaintiff who had standing to sue Equibank. The statute of limitations had already run by the time the amendment was filed. However, the court of appeals held that the amendment was timely filed because the filing of the initial class complaint tolled the limitations period. *Haas*, 526 F.2d at 1097-98.

The result reached in *Haas* is not inconsistent with our holding today. The *Haas* decision was based upon the unique facts present in that case. In *Haas*, the district court had initially certified the class action despite the plaintiff's lack of standing with respect to one of the three defendants. Subsequently, the Supreme Court rendered its opinion in *O'Shea v. Littleton* (1974), 414 U.S. 488, 38 L. Ed. 2d 674, 94 S. Ct. 669, and the Ninth Circuit decided *La Mar v. H & B Novelty & Loan Co.* (9th Cir. 1973), 489 F.2d 461. It was only in light of this previously unavailable authority that the district court determined certification was improper. (*Haas*, 526 F.2d at 1095.) Presumably, the absent plaintiffs relied upon the previously certified class to protect their rights. Equally important, the court expressed no concerns about the potential for abuse inherent in the facts before it.

In contrast to the situation in *Haas*, the initial Hess class action was never certified. In fact, on August 25, 1988, the court postponed briefing on the certification issue because it felt that the standing issue was paramount. Furthermore, at the time the Hess case arose, the law was well settled that a representative who lacks standing as to one or more defendants among a group of defendants cannot represent a class against such defendants. (See, *e.g.*, *La Mar*, 489 F.2d 461.) Finally, in contrast to *Haas*, where the plaintiff had standing as to two out of three banks, Hess had standing with respect to 1 out of 16 defendants.

■■■ It is our view that the situation at bar is precisely the type of abuse that Justice Blackmun warned against in his concurring opinion to *American Pipe*. Like the plaintiffs in *Cunningham*, the plaintiffs in the case at bar attempted to use the class action device to preserve the rights of potential plaintiffs who were sleeping on their rights. In this context, the potential for abuse is great. On the other hand, requiring a class representative to have standing as to each

defendant she purports to sue imposes a comparatively small burden on the plaintiff. Accordingly, we hold that the *American Pipe* class tolling rule does not apply where the representative lacks standing.

The plaintiffs who were injured by defendants other than IRE (the defendant with whom Hess dealt and had standing to sue) are not entitled to tolling during the pendency of the first class action claim, from May 20, 1988, until November 1, 1988. However, these plaintiffs may still be entitled to tolling for the period of November 29, 1988, until April 28, 1989, while the second class claim was pending. The plaintiffs had cured the standing problem for this claim by joining 19 additional plaintiffs, at least one of whom dealt with each defendant.

With respect to the plaintiffs who were injured by IRE we hold that the statute of limitations was tolled for the entire period because Hess did have standing to sue IRE when she brought the first class claim on May 20, 1988.

## VI

Finally, we address the dismissal of plaintiffs' claims for breach of fiduciary duty and consumer fraud. The trial court held that these claims failed to state a cause of action. The plaintiffs contend that the trial court improperly dismissed these claims. We disagree. We find that *Doll v. Bernard* (1991), 218 Ill. App. 3d 719, a case decided by the sixth division of this court, is dispositive of these issues.

Like the plaintiffs to the present appeal, the plaintiffs in *Doll* were investors who purchased partnership interests from Gordon, Boula, and the two companies controlled by Gordon and Boula. Like the defendants at bar, the defendants in *Doll* were partnerships which had sold securities through these unregistered brokers. The plaintiffs in *Doll* alleged, *inter alia*, that the defendants had committed a breach of fiduciary duty and consumer fraud. The plaintiffs in *Doll* alleged essentially the same facts that the plaintiffs to this appeal have alleged. In *Doll*, the trial court dismissed these claims for failure to state a cause of action and the appellate court affirmed.

Plaintiffs are unable to distinguish the case at bar from *Doll*. Accordingly, we hold that the trial court properly dismissed plaintiffs' claims for breach of fiduciary duty and consumer fraud.

In summary, we hold that class actions may be maintained under section 13A of the Illinois Securities Law of 1953 and a class representative may give notice of an election to rescind on behalf of the class. With respect to the class claims at issue on appeal, we hold that these claims were not waived. However, both the class and individual

claims of all plaintiffs who settled with the defendants prior to this appeal have become moot.

We hold that the trial court erred in concluding that the limitation period was not tolled. The filing of Hess' initial class complaint on May 20, 1988, tolled the limitations period for all plaintiffs who dealt with IRE. In addition, if any of the additional 19 representative plaintiffs who joined in the third amended complaint filed their claims within the three-year limitations period, the statute was tolled as to these representative plaintiffs and for all others who dealt with the same defendants. As to those plaintiffs who have not yet settled, they may pursue their claims for rescission subject to a determination by the trial court, in accordance with our directions, that the limitations period has not run. The claims for breach of fiduciary duty and consumer fraud were properly dismissed. We remand the case for proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part and remanded.

MURRAY and McNULTY, JJ., concur.