JOHN L. SCHULER, Plaintiff-Appellant, v. JAMES H. BEERS *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 86—1822

Opinion filed June 9, 1987.

98

Jenner & Block, of Chicago (Don R. Sampen, of counsel), for appellant.

Halfpenny, Hahn & Roche, of Chicago (Thomas F. Roche and Michael T. Reid, of counsel), for appellees Umesh Goswami and J. V. Sheth.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford and Norman Rifkind, of counsel), for appellee James H. Beers.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff John Schuler (Schuler) brought an action in four counts arising from his June 6, 1984, purchase of 10 shares of stock in First Aid Health Care Management Company (First Aid). This appeal involves only count I of the second amended verified complaint which seeks rescission of the sale under the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1983, ch. 121½, par. 137.1 *et seq.*) (Act) for defendants' failure to file a report of sale with the Secretary of State. On November 21, 1985, the court granted both Schuler's motion for summary judgment on the first count against defendant Beers (Beers) and his petition for attorney fees. Thereafter, Schuler filed his second amended verified complaint against defendants Goswami (Goswami) and Sheth (Sheth). On June 11, 1986, the trial court entered an order granting the motion of Goswami and Sheth to dismiss count I of the second amended verified complaint and vacated its prior orders granting summary judgment and assessing attorney fees against Beers.

The facts as they relate to this appeal are undisputed and rather simple. On June 6, 1984, Schuler purchased 10 shares of stock in First Aid, an Illinois corporation, from Beers for $10,000. Beers, Goswami, and Sheth were First Aid's sole incorporators, directors, and officers. Prior to Schuler's purchase, the three defendants voted in their capacity as directors of First Aid to issue more stock for the purpose of raising additional capital. Schuler met with all three prior to his purchase and each encouraged him to buy the stock.

Schuler alleges that shortly after his purchase he discovered that important information had not been disclosed to him and that numerous misrepresentations had been made to him. He first learned that the transaction might be voidable in December 1984 when he was advised by the Illinois Secretary of State's office that the defendants had not complied with the reporting provisions of the Act. Excluding the failure to file the required report with the Secretary of State, First Aid otherwise satisfied the provisions of the limited offering exemption of the Act. (Ill. Rev. Stat. 1983, ch. 121½, par. 137.4(G).) In accordance with the Act, Schuler tendered his stock to Beers in a letter dated December 18, 1984, and he filed his suit in March of 1985, which was within six months of his learning of the potential voidableness of the transaction. See Ill. Rev. Stat. 1983, ch. 121½, par. 137.13(B).

The parties agree that prior to the 1983 amendments to the Act the filing of a report of the sale with the Secretary of State was a condition precedent to its being an exempt transaction pursuant to

the limited offering exemption. The statute provided that sales were exempt if sold:

> "to not more than 35 persons in this State *** (1) no commission, discount or other remuneration exceeding 15% of the initial offering price of the securities is paid or given directly or indirectly for or on account of the sale; (2) the securities shall not be offered or sold by any means of general advertising or general solicitation; and (3) *the issuer, controlling person or dealer shall file with the Secretary of State a report of sale not later than 30 days after the sale* ***. (Such report of sale shall be deemed confidential and shall not be disclosed to the public except by order of court or in court proceedings.)" (Emphasis added.) Ill. Rev. Stat. 1981, ch. 121½, par. 137.4(G).

When section 4(G) was read in conjunction with section 12 and section 13, the result was that the buyer could rescind the purchase. In pertinent part, section 12 provided that:

> "It shall be a violation of the provision of this Act for any person:
>
> A. To sell any security except in accordance with the provisions of this Act ***." (Ill. Rev. Stat. 1981, ch. 121½, par. 137.12.)

Furthermore, the Act provided that "[e]very sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser." (Ill. Rev. Stat. 1981, ch. 121½, par. 137.13(A).) Consequently, prior to the 1983 amendments a purchaser of securities could rescind the purchase based on the issuer's failure to file the report required in section 4(G). See, *e.g.*, *Sanchez v. Walls* (1978), 59 Ill. App. 3d 75, 78-79, 375 N.E.2d 138.

The 1983 amendments, however, confounded the issue of whether the remedy of rescission was still available if the issuer failed to file the report prescribed in section 4(G). After the statute indicated that the issuer was still required to file a report, it continued as follows:

> "but the failure to file any such report shall not affect the availability of such exemption. *** The Secretary of State may impose, in such cases as he may deem appropriate, a penalty for failure to file any such report in a timely manner, but no such penalty shall exceed an amount equal to five times the filing fee. Any such report shall be deemed confidential and shall not be disclosed to the public except by order of court or in court proceedings ***." Ill. Rev. Stat. 1983, ch. 121½, par. 137.4(G)(4).

The 1983 amendments did not change the portions of section 12

and section 13 quoted earlier, which afforded a purchaser of securities the remedy of rescission in instances in which the issuer did not sell the securities in accordance with the Act. Given the change in section 4(G), and taking into account the previously mentioned portions of section 12 and section 13, another provision of section 12, not modified by the amendments, becomes relevant. It states that it is a violation of the provisions of the Act "[t]o fail to file with the Secretary of State any application, report or document required to be filed under the provisions of this Act." Ill. Rev. Stat. 1983, ch. 121½, par. 137.12(D).

■ Hence, the issue in this case revolves around an interpretation of the rather confusing statutory language cited above. Schuler contends that the 1983 amendments did not eliminate the purchaser's right of rescission, while the defendants argue that the amendments definitely had that result. This court previously has indicated that "[t]he primary aim of statutory construction is to give effect to legislative intent as expressed in the statute." (*Yu v. Clayton* (1986), 147 Ill. App. 3d 350, 355, 497 N.E.2d 1278; see also *City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46-47, 429 N.E.2d 492; *Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 690, 458 N.E.2d 616.) The legislative history of the amendments under consideration here fortunately provides some clarification of the matter. Representative Reilly, one of the co-sponsors of the legislation, described the overall purpose of the bill as follows:

> "The fact that Illinois now has on the books an antiquated securities law has prevented a lot of securities from being issued here. *** The real people who are hurt by the law as it stands are the businessmen of the state, particularly the small businesses, the guy who's trying to go out, come up with some risk capital to try a new business, which is the only way that we can produce jobs in this state. It's a good reform. It will help the economic development of this state and deserves the support of the House." 83d Ill. Gen. Assem., House Proceedings, May 18, 1983, at 223.

This statement clearly lends support to the defendants' interpretation of the 1983 amendments. The penalty of rescission is an exceedingly harsh one for simply neglecting to fulfill the ministerial duty of filing a report and would definitely place a substantial burden on small businesses. In addition, these reports were not available to the public, so the issuer's failure to file a report would not affect any buyer. Consequently, the elimination of the remedy of rescission would aid small businesses and remove the loophole formerly used by inves-

tors to repudiate their purchases for reasons completely unrelated to the protections provided by the statute.

■ Schuler correctly maintains that the Act has a paternalistic purpose and should be liberally construed for the benefit of the investor. (*Benjamin v. Cablevision Programming Investments* (1986), 114 Ill. 2d 150, 499 N.E.2d 1309; *Silverman v. Chicago Ramada Inn, Inc.* (1965), 63 Ill. App. 2d 96, 211 N.E.2d 596.) Nevertheless, the specific purpose of the amendments is much more relevant than the overall purpose of the Act. (See *People v. Singleton* (1984), 103 Ill. 2d 339, 345, 469 N.E.2d 200; *Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 612, 483 N.E.2d 613.) Although it is true that the Act should be construed liberally for the benefit of purchasers, we are reluctant to utilize bromidic generalizations as a device for bestowing upon purchasers a windfall because of nothing more than an issuer's failure to file a report in cases of this type. In addition, Schuler argues that the Act imposes upon the defendants the burden of proving that they qualify for an exemption. (Ill. Rev. Stat. 1983, ch. 121½, par. 137.15(A).) This burden of proof, however, refers to factual questions only and thus is irrelevant to the instant case in which the facts are undisputed.

■■ Moreover, the interpretive comments to the 1983 amendments are a useful tool in seeking to determine legislative intent. While the comments are not as persuasive an authority as the legislative debates, they were written by the principal draftsmen of the amendments, Roger G. Fein and Sidney Sosin, and thus are "a valuable guide to legislative intent." (*In re Rizer* (1980), 87 Ill. App. 3d 795, 798, 409 N.E.2d 383; *Ketchmark v. Lynch* (1969), 107 Ill. App. 2d 36, 41, 246 N.E.2d 133.) Their comments discuss the penalties for a failure to file the report mandated by section 4(G), but do not mention rescission. (Ill. Ann. Stat., ch. 121½, par. 137.4(G), Interpretive Comments (1983 Amendments) (Smith-Hurd Supp. 1987); see also Sosin & Fein, *The Landmark 1983 Amendments to the Illinois Securities Law*, 72 Ill. B.J. 196, 197 (1983).) The commentators describe very clearly what they perceive was the goal and the result of the amendment to section 4(G):

> "Section 4.G. is intended to aid small businesses by allowing them to raise capital on a limited basis without incurring the sizeable costs incident to registering a public securities offering. Many small businesses raise needed capital in an informal manner without benefit of counsel. Under section 4.G. prior to amendment, innocent defects in filing have had harsh and inequitable consequences.

To benefit small businesses, this exemption as amended has been designed to be available whether or not an issuer is aware of the report requirement. Under old section 4.G., a purchaser had a right to rescind a securities purchase for up to three years from the date of sale if the seller, despite full compliance with other provisions of section 4.G. and without any fraud or misrepresentation, merely failed to file a report. The unnecessarily harsh consequences and arbitrary operation of the report filing requirement have been repealed to insure greater equity in the application of the Act and to eliminate what was a classic trap for the unwary." Ill. Ann. Stat., ch. 121½, par. 137.4(G), Interpretive Comments (1983 Amendments) (Smith-Hurd Supp. 1987).

■ Consequently, the comments significantly bolster the defendant's arguments and help to dispel the confusion created by an imperfectly drafted statute. It is safe to assume that the legislature would not have changed the statute solely to make a semantic change that had no practical effect. Thus, the amendments must be presumed to have altered the remedy for failure to file a report because the change in the statute providing that an issuer could qualify for the exemption without a report had no other impact. Otherwise, failure to file a report would not disqualify an issuer for an exemption, but the remedy would be the same as if the failure to file a report were a prerequisite to obtaining the exemption. Also, our supreme court noted that "the normal presumption is that an amendment is intended to change the law as it formerly existed, rather than to reaffirm it." *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 29, 394 N.E.2d 1197; see also *Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93, 107, 395 N.E.2d 541; *Yu v. Clayton* (1986), 147 Ill. App. 3d 350, 497 N.E.2d 1278.

■ As we noted earlier, a maxim of statutory construction is that a specific provision of a statute prevails over a general provision. (*People v. Singleton* (1984), 103 Ill. 2d 339, 469 N.E.2d 200; *Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 483 N.E.2d 613.) Consequently, the penalty provisions in section 4(G)(4) relating to the failure to file the report in issue here prevail over those in section 12(D) and section 13(A). (See *Lake Barrington Citizens Committee, Inc. v. Village of Lake Barrington* (1974), 19 Ill. App. 3d 648, 312 N.E.2d 337.) Furthermore, section 12(D) is penal in nature and thus should be strictly construed. (See, *e.g., People v. Lutz* (1978), 73 Ill. 2d 204, 212-13, 383 N.E.2d 171; *People v. Mack* (1985), 133 Ill. App. 3d 788, 794, 479 N.E.2d 445.)

More importantly, section 13(A) is inapplicable because a careful reading of the 1983 amendments reveals that the sale itself was not in violation of the statute. Under this line of analysis, the reporting requirement and the exemption are two separate, distinct provisions, and failure to file a report does not cause a sale to be in violation of the Act. The language of the statute supports this interpretation because the filing requirement does not inure until all sales are completed.

Apparently, this is the first case in which the effect of the 1983 amendments on the rescission remedy has arisen, although several opinions, albeit in *dicta*, imply that the 1983 amendments eliminated the rescission remedy for failure to file the report prescribed in section 4(G). (See *Bolden v. Chiappa* (1986), 140 Ill. App. 3d 913, 918, 489 N.E.2d 6; *Yohnka v. Darling Nells, Inc.* (1985), 136 Ill. App. 3d 309, 311, 483 N.E.2d 649; see also *McConnell v. Surak* (7th Cir. 1985), 774 F.2d 746.) In *Salzbrenner v. Beckham* (1986), 145 Ill. App. 3d 941, 943, 496 N.E.2d 354, the court in *dicta* enunciated the position espoused by the defendants in the present case as follows:

> "The new version of section 4(G) empowers the Secretary of State to prescribe rules and regulations for the filing of a report upon the completion of a security's sale. Of particular significance to this case was the inclusion of a provision that states: '[T]he failure to file any such report shall not affect the availability of such exemption.' (Ill. Rev. Stat. 1983, ch. 121½, par. 137.4(G)(4).) This proviso effectively nullifies a purchaser's right to rescind a sale solely on account of the seller's failure to file a report of the sale."

Another persuasive, although nonbinding, guide to interpreting the 1983 amendments is provided by the professional literature on the subject. In their *Illinois Bar Journal* article, Sosin and Fein reiterate the statements they made in the reviser's comments to the amendments that the issuer was still required to file a report, but the rescission remedy was not available to a purchaser based on the issuer's failure to perform this duty. See Sosin & Fein, *The Landmark 1983 Amendments to the Illinois Securities Law*, 72 Ill. B.J. 196 (1983); see also Fein & Sosin, *Exemption from Registration Under State Law: The Illinois Securities Law and Regulations*, I Securities Law (ICLE) sec. 8.7 (1985).

The legislature again revised section 4(G)(4) in 1985. The amendment provides as follows:

> "[T]he failure to file any such report shall constitute a violation of subsection D of Section 12 of this Act, *** and provided further that the civil remedies provided for in subsection A of Sec-

tion 13 of this Act and the civil remedies of rescission and appointment of a receiver, conservator, ancillary receiver or ancillary conservator provided for in subsection F of Section 13 of this Act shall not be available against any person by reason of the failure to file any such report or on account of the contents of any such report." (Ill. Rev. Stat. 1985, ch. 121½, par. 137.4(G)(4).)

The 1985 amendments inserted a similar statement into section 13(A). Both parties agree that after the 1985 amendments rescission is not available to an investor if an issuer fails to file the reports mandated in section 4(G)(4).

■ We have mentioned earlier that the general presumption is that the legislature intends for a change in the law when enacting a new statute. However, the defendants are able to overcome this presumption in regard to the 1985 amendments. Although the specific change at issue was not mentioned in the legislative history, Representative Vinson, a co-sponsor of both the 1983 and the 1985 amendments, noted that the 1985 amendments were intended to make "more manifest the changes that were adopted at that time [1983] and sandpaper[s] any rough edges that occurred." (84th Ill. Gen. Assem., House Proceedings, May 14, 1985, at 143.) When referring to the changes in both section 4(G)(4) and section 13(A), Sosin and Fein in the interpretive comments use terms such as "clarified," "emphasized," and "specifically provided." (Ill. Ann. Stat., ch. 121½, pars. 137.4(G)(4), 137.13(A), Interpretive Comments (1985 Amendments) (Smith-Hurd Supp. 1987).) The plaintiffs' argument that the 1985 amendments eliminate the rescission remedy for failure to file the applicable reports, but increase the penalty in other respects, is an intolerably procrustean interpretation of those amendments. Therefore, we hold that the defendants have effectively rebutted the presumption that the 1985 amendments changed the statute with respect to the availability of the rescission remedy when an issuer fails to file the report mandated by section 4(G). See O'Connor v. A & P Enterprises (1980), 81 Ill. 2d 260, 272, 408 N.E.2d 204.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

STAMOS and BILANDIC, JJ., concur.