Fourth Division

March 19, 1998

1-97-0859

ALEXANDER J. ARTHUR, )  APPEAL FROM THE

)  CIRCUIT COURT OF

Plaintiff-Appellant, )  COOK COUNTY.

)

v. )

)  

LUTHERAN GENERAL HOSPITAL, INC., )

an Illinois Not-For-Profit Organization, )

and DR. ANN WALCZYNSKI, )  HONORABLE 

)  EDWARD J. BURR,

Defendants-Appellees. )  JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court:

The Illinois Mental Health and Developmental Disabilities Code 
sets out a statutory plan for involuntary admission of mentally ill persons.  This case raises the question of whether a false imprisonment cause of action exists for a person who is committed in violation of a time limit in the Code.  We conclude that it does.

FACTS

Some time in 1990, Alexander J. Arthur (Arthur), a 52-year-old former construction worker, began to develop breathing trouble, purportedly from years of working with chemicals.  He contacted the Social Security Administration to apply for disability benefits, but his effort proved fruitless and frustrating.

On June 12, 1992, Arthur was admitted to Resurrection Medical Center (Resurrection) with recurrent chest pain and shortness of breath.  The emergency room staff requested a psychological consultation as part of Arthur's treatment.

Dr. Ann Walczynski (Walczynski) spoke with Arthur.  According to her written consultation summary, Arthur displayed anxiety over his health and financial situation.  Arthur also voiced aggravation at the Social Security Administration and its handling of his application for disability benefits.  As Walczynski noted in her consultation summary:

"*** He has become increasingly extremely angry to the point that he has been thinking about going to Springfield[, Illinois] and throwing one of the [Social Security Administration] officers out of the window and all the papers destroyed [sic].  He also has been having thoughts of killing another staff member in that office in Springfield.  His behavior has been progressively escalating; and on the day of this examination, he did throw a telephone set against the wall after one of the conversations with officers from Springfield.  The patient says that he will not get satisfaction unless he 'hurts' these people.

* * *

*** [The patient] says that he actually never had any problems with depression prior to nine months ago.  'But I think I will have problems once I go to Springfield and punch these guys and kick him [sic].  They never tell me anything right, but I will get my satisfaction.'  ***  The patient admits to feeling hopeless and helpless but denies suicidal ideation.  He says that he would rather have the other people to die and he is about to do it once he leaves the hospital.

* * *

*** The patient does admit even on repeated questioning that he intends to hurt the staff members of these offices once he leaves the hospital."

Walczynski recommended Arthur's transfer to the mental health facility at Lutheran General Hospital (Lutheran General), once his physical condition stabilized.  Although Arthur agreed to voluntary admission, Walczynski drafted a physician's certificate for involuntary admission pursuant to the Mental Health and Developmental Disabilities Code (the Code).  See 405 ILCS 5/1-100 
et
 
seq.
 (West 1993 & Supp. 1997).  Walczynski's certificate cited Arthur's potential "to inflict serious physical harm" on Social Security Administration staff members.  The certificate, dated June 12, 1992, at 9 p.m., also said:

"[Patient] has been extremely angry with soc. security offices staff (Chicago + Springfield) and has been threatening to harm some staff members - once he leaves the hospital.  Homicidal potential."

On June 14, 1992, at 9 p.m., although his physical condition had stabilized sufficiently to allow his transfer to Lutheran General, Arthur chose to remain at Resurrection to complete his physical treatment with his own physician.  Walczynski again spoke with Arthur.  Although the record does not contain any notes from this meeting, Walczynski read her notes of it during her discovery deposition.  Walczynski observed Arthur's "affect is still angry when the issue of Social Security office staff is discussed."  Walczynski concluded: "Continue present treatment ***."  However, Walczynski did not draft a second physician's certificate to memorialize this meeting.

On June 16, 1992, Arthur was transferred to Lutheran General as Walczynski's patient.  When Arthur refused voluntary admission, Martana Ghera, a Lutheran General staff nurse, completed a petition for involuntary admission based on Walczynski's certificate, as well as her personal observations of Arthur's demeanor.  The petition, dated June 16, 1992, at 7 p.m., said: "Person identified as Alexander Arthur is intensely angry and making aggressive and threatening statements directed at Social Security staff."  Arthur was involuntarily admitted on Ghera's petition and Walczynski's certificate, executed 94 hours earlier.

When Arthur complained about his involuntary admission and refused any treatment, Ghera telephoned Walczynski.  Shortly thereafter, Walczynski arrived at Lutheran General and initially observed Arthur remained "potentially homicidal."  Later that evening, as Walczynski spoke with Arthur and his daughter, Arthur said his threats against the Social Security Administration were not serious.  In an astonishingly quick recovery from his psychosis, Arthur agreed to outpatient treatment to control his rage and was discharged the next day.

On June 15, 1994, Arthur filed a one count complaint against Walczynski and Lutheran General.  According to his complaint:

"*** [I]mmediately thereafter entering said hospital, the plaintiff, ALEXANDER J. ARTHUR, demanded of the said LUTHERAN GENERAL HOSPITAL, operating by and through their duly authorized agents, servants and employees, and the said DR. ANN WALCZYNSKI, and each of them, that he be released from the said hospital; that notwithstanding said demand, the said defendants, kept the plaintiff in a confined area and refused to release him from that confined area; further, that the defendant, operating as afore [sic] said, did then and there refuse plaintiff's demand to be released from said hospital and the defendant, and each of them, wrongfully detained and imprisoned the plaintiff against his will."

Arthur alleged this false imprisonment proximately caused "great mental anguish, humiliation and shock."

After some preliminary motion practice and discovery, Lutheran General and Walczynski filed motions for summary judgment.  In his response brief, Arthur also asked for summary judgment.  

On January 27, 1997, the trial court granted summary judgment to Lutheran General and Walczynski and denied Arthur's cross-motion for summary judgment.  The trial court said:

"I'm not able to tell you that I'm altogether satisfied that the law can be used in this manner to effectuate the taking of a person's liberty and then cloaking it in the concept that, well, it was done in accordance with the judicial procedure without making some examination as to what, if any were the motives, whether there was a good faith belief in the certifier that the individual involved was the appropriate subject of a commitment or not, but I don't make policy, and I don't make law and my duty is to follow the law as best that I understand it, and I think Olsen v. Karw[o]ski is controlling in this case.  Like it, don't like it, it's irrelevant.  Nobody has appointed me as a court of review, and I don't have the opportunity to be a judicial anarchist.  I have to follow the law."

This appeal followed. 

DECISION

   Appellate review of an order granting summary judgment is 
de novo
.  
Kotarba v. Jamrozik
, 283 Ill. App. 3d 595, 669 N.E.2d 1185 (1996).  This court must consider anew the facts and the law related to a case in determining whether the trial court correctly decided no genuine issues of material fact were present and the moving party was entitled to judgment as a matter of law.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 649 N.E.2d 1323 (1995); 
Deloney v. Board of Education of Thornton Township
, 281 Ill. App. 3d 775, 666 N.E.2d 792 (1996).  If the plaintiff fails to establish any element of the cause of action, summary judgment in favor of the defendant is proper.  
Flint v. Court Appointed Special Advocates of DuPage County, Inc.
,
 285 Ill. App. 3d 152, 674 N.E.2d 831 (1996).  We may affirm summary judgment for any grounds which properly appear in the record, regardless of whether the trial court relied on those same grounds.  
Leavitt v. Farwell Tower Ltd. Partnership
, 252 Ill. App. 3d 260, 625 N.E.2d 48 (1993).

The Code provides for involuntary commitment in a mental health facility.  To begin the process of involuntary commitment, any person 18 years of age or older may present a petition to the director of a mental health facility, naming a respondent whose "immediate hospitalization is necessary for the protection of such person or others from physical harm."  405 ILCS 5/3-601(a) (West 1997).  This petition must include the following: (1) a detailed statement of the reasons for the respondent's involuntary commitment, "including a description of any acts or significant threats supporting [involuntary commitment] and the time and place of their occurrence;" (2) the name and address of the respondent's closest relatives; (3) the person's relationship with the respondent; and (4) any witnesses who may help prove these facts.  405 ILCS 5/3-601(b) (West 1997).

Additionally, the Code provides: 

"The petition shall be accompanied by a certificate executed by a physician, qualified examiner, or clinical psychologist which states that the respondent is subject to involuntary admission and requires immediate hospitalization.  The certificate shall indicate that the physician, qualified examiner, or clinical psychologist personally examined the respondent 
not more than 72 hours prior to admission
."  (Emphasis added.)  405 ILCS 5/3-602 (West 1997).
(footnote: 1)
"Emergency [involuntary] admission to a mental hospital is an extreme step and it should not be invoked except in true emergencies."  
People v. Ralls
, 23 Ill. App. 3d 96, 98, 318 N.E.2d 703 (1974).  Because involuntary commitment seriously invades a patient's liberty, the Code requirements should be strictly construed in favor of the patient.  
In re Martens
, 269 Ill. App. 3d 324, 327, 646 N.E.2d 27 (1995).

However, in another context, the Illinois Supreme Court has held procedural deviations from the Code do not warrant reversal of an involuntary commitment order if the defects "could and should have been objected to immediately, could have been easily cured if timely objected to, and made no difference anyway."  
In re Nau
, 153 Ill. 2d 406, 419, 607 N.E.2d 134 (1992)(discussing the Code's notice of hearing provision in section 3-611).  Additionally, this court has held "any deficiencies in the petition or accompanying certificates could not affect the court's power to enter the order of commitment."  
In re Wheeler
, 152 Ill. App. 3d 371, 373, 504 N.E.2d 524 (1987).  But see 
In re Tiffin
, 269 Ill. App. 3d 581, 646 N.E.2d 285 (1995)(finding deficiencies in certificates could affect the State's ability under the Civil Practice Act to reinstate a petition for involuntary commitment).

In 
Wheeler
, a patient challenged her involuntary commitment, arguing the State used a section 3-602 certificate which violated the Code's 72-hour rule.  Specifically, the patient noted the certificate stated the doctor had examined the patient "in April 1986" and the certificate was signed on May 29, 1986, a span of at least 696 hours.  We upheld the trial court's jurisdiction to order the patient's involuntary commitment.  
Wheeler
, 152 Ill. App. 3d at 373.  We found the deficient certificate did not deprive the trial court of jurisdiction because "it would not serve the interest of [the patient] or of society to reverse the trial court's decision because of technical defects in the first certificate."  
Wheeler
, 152 Ill. App. 3d at 373.

In 
Tiffin
, a patient was arrested for disorderly conduct, and the State filed a petition for involuntary commitment and obtained an order for detention and examination under the Code.  On April 15 and 18, 1994, the patient was examined in a mental hospital, and his physician completed a section 3-602 certificate.  On April 21, the patient voluntarily committed himself.  The State voluntarily dismissed the petition, obtaining leave to reinstate the petition within 21 days.  On April 27, at least 216 hours after the certificate was completed, the trial court reinstated the involuntary commitment petition.  The reinstated petition was attached to the certificates executed after the April 15 and 18 examinations.

The court found "section 3-602 anticipates fresh information will be used as a basis for changing a patient's status from voluntary to involuntary commitment ***."  
Tiffin
, 269 Ill. App. 3d at 584.  The court invalidated the reinstated petition because it relied on stale certificates, contrary to the Code's 72-hour rule.  
Tiffin
, 269 Ill. App. 3d at 585.

While 
Wheeler
 and 
Tiffin
 yield competing interpretations of this rule, the factual posture of Arthur's appeal creates still different problems.  Arthur was not involuntarily committed pursuant to a court order which relied on a defective certificate.  Instead, Arthur was committed overnight because of a defective certificate.  In other words, Arthur's complaint did not challenge a court-ordered commitment, but rather alleged a false imprisonment claim against the hospital and the certifying physician.

Contrary to the defendants' contentions, the Code does not preempt Arthur's common law claim.  The Code does not supply a comprehensive statutory scheme to remedy unlawful admission.  Instead, a common law claim provides Arthur an opportunity to recover for his overnight detention on a stale certificate.

Additionally, contrary to the defendants' suggestions, a common law negligence claim conceptually does not provide the proper vehicle to remedy unlawful admission.  Negligence claims address unintentional malfeasance or nonfeasance.  A negligence claim here would assert the following: in exercising due care, the defendants could have (or should have) prevented Arthur's involuntary admission.  However, the defendants acted intentionally here; both Dr. Walczynski and Nurse Ghera intended to admit Arthur involuntarily.  Arthur's admission was not an avoidable fluke that due care would have prevented.

"The action for the tort of false imprisonment, sometimes called false arrest, is another lineal descendant of the old action of trespass [to person].  It protects the personal interest in freedom from restraint from movement."  W. Keeton, Prosser & Keeton on Torts §11, at 47 (5th ed. 1984)(hereinafter Prosser & Keeton).

The interest involved is "in a sense a mental one," and false imprisonment may be maintained without proof of actual damages.  Prosser & Keeton at 47.  The tort is complete after "even a brief restraint on the plaintiff's freedom," and the plaintiff may recover nominal damages.  Prosser & Keeton at 48.  In short, the plaintiff has a dignitary interest in freedom from any restraint.  See generally 19 Ill. L. & Prac., 
False Imprisonment & Unlawful Restraint
 (1991)
.

In Illinois, "[t]o state a cause of action for false imprisonment, the plaintiff must allege that his personal liberty was unreasonably or unlawfully restrained against his will and that defendant(s) caused or procured the restraint."  
Vincent v. Williams
, 279 Ill. App. 3d 1, 5-6, 664 N.E.2d 650 (1996).  False imprisonment requires an actual or legal intent to restrain.  
Lopez v. Winchell's Donut House
, 126 Ill. App. 3d 46, 50, 466 N.E.2d 1309 (1984).  However, imprisonment under legal authority is not false imprisonment.  
Shelton v. Barry
, 328 Ill. App. 497, 66 N.E.2d 697 (1946).  False imprisonment claims do not lie for a detention made by virtue of legal process issued by a court or an official with jurisdiction to issue such process.  
See 
Kay v. Boehm
, 32 Ill. App. 3d 853, 366 N.E.2d 781 (1975); 
Jacobson v. Rolley
, 29 Ill. App. 3d 265, 330 N.E.2d 256 (1975).  

In order to determine the viability of Arthur's false imprisonment claim, we must determine whether Arthur's involuntary commitment was a detention under legal process.  
Olsen v. Karwoski
, 68 Ill. App. 3d 1031, 386 N.E.2d 444 (1979), addresses this issue.  We have found no other Illinois decision addressing a false imprisonment claim under similar circumstances.  

In 
Olsen
, on October 11, 1974, a patient was brought to the mental health facility at Mt. Sinai Hospital by the police pursuant to the Code's involuntary commitment provisions, after he was arrested for unlawful conduct at his wife's home.  The patient's wife signed the petition, and at her behest without examining the patient, Dr. Dulin signed the certificate.  Dr. Chun examined the patient at the hospital and signed another certificate.  For unknown reasons, the patient was discharged that evening.  On October 15, the patient was brought to Tinley Park Mental Health Center by the police pursuant to the Code's involuntary commitment provisions.  Both Dr. Dulin and Dr. Chun signed certificates dated October 14, but neither examined the patient on that date.

We noted the petition and the certificate for involuntary admission are the gateway into the judicial process for commitment, and thus part of that process.  
Olsen
, 68 Ill. App. 3d at 1036.  But, more importantly, we held:     

"The limitation upon the plaintiff's freedom of movement were the result of 
legal
 processes
 and thus not grounds for an action charging false imprisonment.  ***  The emergency admissions of which the plaintiff complains were the result of 
two 
legal 
police 
arrests
." (Emphasis added.)  
68 Ill. App. 3d at 1038
 (citing 
Kay
, 32 Ill. App. 3d at 856 (arrest on order of contempt) and 
Jacobson
, 29 Ill. App. 3d at 267 (arrest on bench warrant)).  

The court concluded the patient's false imprisonment claim against his wife and the two doctors must fail.  
Olsen
, 68 Ill. App. 3d at 1038.

While the court never said whether the petition/certificate process or the "legal police arrests" made the restraint a result of legal process, the cases on which the court relies--lawful arrest cases--clearly indicate the latter.
  We believe the 
Olsen
 court found the two legal police arrests, and not the defective certificates, were legal processes which shielded the defendants from liability for false imprisonment.  In other words, the police arrests in 
Olsen
 rescued the defendants from the plaintiff's false imprisonment claims based on the defective certificates.

Although we recognize the difficult and delicate balance between the need for quick involuntary commitment decisions and the rights of mentally ill patients, we distinguish this case from 
Olsen
.
  Like the plaintiff in 
Olsen
, Arthur challenges, and seeks damages for, his admission by health care providers responsible for his involuntary commitment.  Unlike the plaintiff in 
Olsen
, Arthur never was lawfully arrested by law enforcement officers.
  We are reluctant to place the force of the phrase "lawful process" behind a statutorily inadequate certificate and petition, and we read 
Olsen
 accordingly.

In this case the time between certificate and admission was 94 hours, well beyond the statutory limit.  It should not have been difficult for Lutheran General to make that calculation.  It would have been easy enough for Walczynski to prepare another certificate the second time she saw Arthur at Resurrection on June 14.  We do not believe we are imposing an unreasonable burden on anyone by requiring compliance with the clear terms of the statute.  The liberty interest implicated in matters of involuntary commitment requires vigilance.

CONCLUSION

Because we believe Arthur's false imprisonment claim raises fact issues which warrant further proceedings, we reverse the grant of summary judgment to the defendants and remand this case to the trial court.  We affirm the trial court's order denying summary judgment to Arthur.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

CERDA, P.J. and McNAMARA, J., concur.

FOOTNOTES
1:  On the eve of oral argument, Walczynski filed a motion to cite section 6-103 of the Code as additional authority.

Section 6-103 provides an exemption from liability for "[a]ll persons acting in good faith and without negligence" in the preparation of certificates and petitions.  405 ILCS 5/6-103(a) (West 1997).

We denied Walczynski's motion and will not consider this statute.  Walczynski never raised this issue before the trial court and only raised it before this court after all the parties had completed their briefs, one day before oral argument was to take place.

While we decline to rule on this statute's applicability, we note its exemption does not apply to bad faith or negligent preparation of involuntary admission documents.