SECOND DIVISION

DECEMBER 14, 1999

No. 1-98-2982

GEORGE and JOY KUGLER, ALBERT and JANET )  APPEAL FROM THE

FLEUCHAUS, ROGER and MARY KAMPSCHROER, )  CIRCUIT COURT OF

SANG KI and HELEN LEE, ERNEST and HARRIET )  COOK COUNTY,

LOBERG, EDWARD and VIRGINIA MANN, JAMES and )

CHARLOTTE NALLEN, JERRY and BARBARA NEUMANN, )

RICHARD and THERESA BARTOSZEWSKI, FRANK )

LEIFEL, EDWARD and ROSE WESKERNA, and )

ELIZABETH PAINTIN, on Behalf of Themselves )

and All Others Similarly Situated, and )

MARTHAS HESS, et al., )

)

Plaintiffs-Appellees, )

)

v. )

)

SOUTHMARK REALTY PARTNERS III, a California )

Limited Partnership, n/k/a McNeil Real )

Estate Fund XXIII, McNeil Partners, L.P., )

a Delaware Partnership, and SOUTHMARK )

INVESTMENT PARTNERSHIP 85, a Nevada )

Corporation, )

)

Defendants-Appellants )

)

(I.R.E. Real Estate Income Fund, a Florida )

Limited Partnership and BFC Financial )

Corporation, a Florida Corporation, as )

its Successor in Interest, I.R.E. Real )

Estate Income Advisors Corporation, )

Alan B. Levan, Susan C. Peristein, and )

Frank V. Grieco; )

)

I.R.E. Pension Investors II, Ltd., a Florida )  Nos. 88-CH-4670

Limited Partnership, I.R.E. Pension Advisors ) 89-CH-4117

Corporation, Alan B. Levan, Susan C. )

Peristein and Frank V. Grieco; ) (CONSOLIDATED)

)

I.R.E. Real Estate Growth Fund, Ltd., Series )

29, a Florida Limited Partnership, I.R.E. )

Advisors Series 29 Corporation, and I.R.E. )

Series 29 Associates, Ltd.; )

)

I.R.E. Real Estate Growth Fund, Ltd., Series )

28, a Florida Limited Partnership, I.R.E. )

Advisors Series 28 Corporation, Alan B. )

Levan, Susan C. Peristein, and Frank V. )

Grieco; )

)

Hallwood Income Real Estate Investors A, )

a Delaware Limited Partnership, as the )

Successor in Interest to Equitec Real Estate )

Investors Fund A, and its General Partner )

Hallwood Realty Partners, L.P., a Delaware )

Limited Partnership; )

)

Southmark Equity Partners II, a California )

Limited Partnership, n/k/a McNeil Real )

Estate Fund XXV, Equity Partners, a Texas )

Partnership, and McNeil Partners, L.P., )

a Delaware Partnership; )

)

Southmark Realty Partners II, a California )

Limited Partnership, n/k/a McNeil Real )

Estate Fund XXII, Southmark Investment )

Group, Inc., a Nevada Corporation, and )

McNeil Partners L.P., a Delaware Limited )

Partnership, )  THE HONORABLE

)  THOMAS A. HETT,

Defendants). )  JUDGE PRESIDING.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

A consolidated complaint was filed against several entities, including the limited partnership of Southmark Realty Partners III, Ltd. (SRP III), and SRP III's general partner, Southmark PS, Inc. (SPS), formerly known as Southmark Investment Group 85, Inc. (SIG 85).  Therein, class representatives (plaintiffs) sought to rescind their purchases of limited partnership interests in SRP III.  Upon plaintiffs' motion, the circuit court entered summary judgment in plaintiffs' favor on the issue of liability.  Thereafter, plaintiffs filed a motion seeking to set the amount of judgment against SPS
(footnote: 1) on the claim for which they had been granted summary judgment.  The circuit court granted plaintiffs' motion, entering an order against SPS in the amount of $902,759.48.  The judgment was later modified to $902,745.98 upon SPS's motion for reconsideration.  SPS appeals, contending the circuit court erred: (1) in entering judgment in plaintiffs' favor where the evidence submitted by plaintiffs as to damages was inadmissible and insufficient; and (2) in refusing to deduct accrued interest from the judgment where two members of the class sold their interests in SRP III prior to the entry of judgment.

For the reasons that follow, we affirm.

BACKGROUND

On May 20, 1988, class representatives, on behalf of hundreds of individuals who purchased an interest in several limited partnerships during the years of 1985 and 1986, filed a class action suit for securities rescission in the circuit court of Cook County against 16 defendants who used the services of unregistered brokers in violation of the Illinois Securities Law of 1953 (the Securities Law) (Ill. Rev. Stat. 1985, ch. 121½, par. 137.1 
et seq.
).  The circuit court dismissed the action due to lack of standing on three separate occasions.  However, on appeal of the circuit court's denial of class action treatment, this court found that a class representative may give notice of an election to rescind on behalf of the members of the class under the Securities Law
.  See 
Hess v. I.R.E. Real Estate Income Fund, Ltd.
, 255 Ill. App. 3d 790, 804-05, 629 N.E.2d 520, 530 (1993).

On September 11, 1995,
 a consolidated class action amendment to complaints for rescission pursuant to the Securities Law was filed, as directed by this court in 
Hess
, reasserting the class allegations from the original complaint through new class representatives.  The consolidated complaint was brought against several entities
(footnote: 2); however, the instant appeal concerns purchasers of interest in only one of the limited partnerships delineated  therein, SRP III, as well as its general partner, SPS (formerly known as SIG 85).

Following the filing of its amendment to complaints for rescission, the class moved for summary judgment against SPS on both liability and damages.  On April 25, 1996, the lower court granted summary judgment as to liability in favor of the class.  The court, however, denied plaintiffs' motion on the issue of damages.

On January 20, 1998, plaintiffs filed a motion seeking to have judgment entered on the rescission claim for which they had been granted summary judgment in 1996, relying solely on the affidavit of one of the class counsel's paralegals, Jeanne Krejci.  Based on Krejci's calculations from computer records and distribution data supplied to the class by defendants through their prior counsel, Arnstein & Lehr, plaintiffs contended that SPS' liability under section 13 of the Securities Law totaled $891,672.25, with interest thereon at $114.30 
per diem
.  See 815 ILCS 5/13 (West 1996).

On April 22, 1998, SPS filed its response to plaintiffs' motion to enter judgment against it, contending, 
inter alia
, that plaintiffs' motion should be denied "because the motion does not establish that the amount sought by the Class is the proper amount of judgment."  In addition, on April 24, 1998, SPS filed an amended motion to strike the Krejci affidavit, arguing therein that plaintiffs failed to establish the authenticity, admissibility or completeness of the data used to calculate SPS's liability.  SPS further asserted that the letter relied upon by Krejci in making her calculations was neither produced by SPS pursuant to discovery, written by Arnstein & Lehr in its capacity as SPS' counsel, nor represented an admission against SPS' interest.

On May 11, 1998, following a hearing on the matter, the circuit court entered a judgment order against SPS in the amount of $902,759.48, as to the liability for plaintiffs' claims for rescission, pursuant to section 13 of the Securities Law (815 ILCS 5/13 (West 1996)).

On June 10, 1998, SPS filed its motion to reconsider and modify or vacate the judgment order, arguing, 
inter alia
, that the calculation of damages was inaccurate in that "newly discovered evidence" established that two class members redeemed their investments in SRP III on December 31, 1995.  These distributions, which totaled $12.50, as well as interest thereon in the amount of $2,952.05, had not been deducted from the total amount of the judgment entered.

On July 20, 1998, plaintiffs filed their response to SPS' motion to reconsider, contending, 
inter alia
, 
that the issue regarding the calculation of interest had been previously decided on November 12, 1996, by Judge Margaret S. McBride, a judge whom SPS and other named defendants in the consolidated class action suit were previously before.  There, the I.R.E. defendants argued the same proposition for the deduction of accrued interest as was argued by SPS; however, Judge McBride ruled that the interest, as calculated by the class, followed the plain reading of the statute.  See 815 ILCS 5/13 (West 1996).

On June 18, 1998, during the hearing on SPS' motion to reconsider, SPS asserted that, although the present action was consolidated, Judge McBride's ruling regarding the calculation of interest concerned judgments in a separate lawsuit to which SPS was not a party.  Moreover, SPS posited that, while section 13(A)(1) of the Securities Law (815 ILCS 5/13(A)(1) (West 1996)) deals with the calculation of interest where a purchaser still is in ownership of the securities, section 13(A)(2) (815 ILCS 5/13(A)(2) (West 1996)) does not specifically deal with the calculation of interest where, as here, the securities are disposed of through either sale or redemption.

On July 13, 1998, the circuit court entered an order finding that plaintiffs' calculation of interest followed the plain reading of the language of the Securities Law (815 ILCS 5/13 (West 1996)), and adopting the decision of Judge McBride in regard to the I.R.E. defendants.  Nonetheless, since plaintiffs conceded that SPS did not receive a $12.50 credit from the two class members who redeemed their investments in SRP III prior to the entry of judgment, the court modified its order to $902,745.98 to reflect the deduction of said amount.  In all other respects, however, the circuit court held that its May 11, 1998, judgment was to stand as entered.

On August 12, 1998, SPS timely filed its notice of appeal.

DISCUSSION

I

Initially, we note that it is undisputed that plaintiffs' motion for entry of judgment is akin to a motion for summary judgment.  Thus, the granting of such a motion is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  
Purtill v. Hess
, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986); 
Arthur v. Lutheran General Hospital, Inc.
, 295 Ill. App. 3d 818, 822, 692 N.E.2d 1238, 1240 (1998).

In the instant case, the circuit court granted summary judgment in favor of plaintiffs as to liability for their claims of rescission.  Thereafter, on January 20, 1998, plaintiffs filed a motion to set the amount of judgment against SPS pursuant to section 13(A) of the Securities Law (815 ILCS 5/13(A) (West 1996)).  Attached to their motion, plaintiffs included the affidavit of Jeanne Krejci, a paralegal employed by plaintiffs' counsel.  On appeal, SPS asserts that Krejci's affidavit is both inadmissible and insufficient in violation of both Supreme Court Rule 191 (145 Ill. 2d R. 191) and federal rules of evidence, because the records relied upon by Krejci were neither "proved up" as business records nor authenticated.  We disagree.

Supreme Court Rule 191 provides that an affidavit:

"shall be made on the personal knowledge of the affiant[]; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 145 Ill. 2d R. 191.

If, from the document as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, Rule 191 is satisfied.  
Burks Drywall, Inc. v. Washington Bank & Trust Co.
, 110 Ill. App. 3d 569, 575, 442 N.E.2d 648, 654 (1982).  Further, courts must accept an affidavit as true if it is uncontradicted by counteraffidavit or other evidentiary materials (
Lindahl v. City of Des Plaines
, 210 Ill. App. 3d 281, 299, 568 N.E.2d 1306, 1318 (1991)), and whether to grant a motion to strike an affidavit submitted in support of a summary judgment motion is a question within the sound discretion of the circuit court (
Cincinnati Cos. v. West American Insurance Co.
, 287 Ill. App. 3d 505, 514, 679 N.E.2d 91, 97, (1997)).

In the affidavit at issue, Krejci attested that she reviewed the computer records derived from those persons who sold the limited partnership interests in SRP III to plaintiffs, which specifically indicated the dates and amounts of each class member's purchase of interest during 1985 and 1986 and were further attached to the affidavit as an exhibit.  The information was used along with distribution data supplied to the class by SPS' prior counsel
(footnote: 3) to prepare calculations "showing the amount paid by each class member for each partnership interest, plus accrued simple interest at a rate of 10% per year from the date of sale to February 3, 1998, minus credits for distributions as indicated by distribution data on individual investors provided [by] the Defendants."  After Krejci's calculations, plaintiffs posited that the amount of partnership claims for which SPS was liable totaled $891,672.25, with a 
per diem
 increase of $114.30.

As SPS neither disputes that members of the class invested the amounts claimed nor contends that data upon which Krejci relied for the calculation of liability was inaccurate, we agree with the circuit court that its motion to strike should not have been granted.  In our view, the affidavit submitted by plaintiffs complies with Illinois rules.  See 
Burks Drywall
, 110 Ill. App. 3d at 575, 442 N.E.2d at 654.  The affidavit contains evidentiary facts, not in dispute, which reasonably appear to be within the personal knowledge of the affiant in her employ as a paralegal for plaintiffs' counsel.  
Cincinnati Cos.
, 287 Ill. App. 3d at 514, 679 N.E.2d at 97.  And, it expressly states that the affiant had personal knowledge of the allegations included therein in that she prepared the calculations based on section 13(A) of the Securities Law.  See 815 ILCS 5/13(A) (West 1996); 
Lindahl
, 210 Ill. App. 3d at 299, 568 N.E.2d at 318.  Moreover, the record shows evidence of material sent to plaintiffs regarding names, purchase dates, investment amounts, distribution amounts and investor distribution queries received of Arnstein & Lehr that corresponded to the exhibit attached to Krejci's affidavit; Krejci simply took the material and applied the mechanical calculation from section 13(A) of the Securities Law (815 ILCS 5/13(A) (West 1996)) to determine SPS' liability.  Accordingly, we cannot agree that the circuit court erred in denying SPS' motion to vacate and thereafter entering judgment in plaintiffs' favor, particularly where no evidentiary material was filed contradicting the information provided in Krejci's affidavit.  See 
Lindahl
, 210 Ill. App. 3d at 299, 568 N.E.2d at 1318.

II

SPS next contends the circuit court erred in refusing to deduct accrued interest from the judgment where two members of the class sold their interests in SRP III prior to the entry of judgment.  Specifically, it argues that the Securities Law is "unclear" on the issue and does not address the accrual of interest when the purchaser no longer owns the security.  We disagree.

Section 13(A) provides that those persons who participated or aided in selling securities in violation of the provisions of the Securities Law (815 ILCS 5/1 
et seq.
 (West 1996)) shall be jointly and severally liable to the purchaser, at his or her election:

"(1) for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold or, where the securities were not received, of any contract made in respect of the sale; or

(2) 
if the purchaser no longer owns the securities
, for the amounts set forth in clause (1) of this subsection A less any amounts received by the purchaser for or on account of the disposition of the securities."  (Emphasis added.)  815 ILCS 5/13(A)(1), 13(A)(2) (West 1996).

In construing the statute, the court must look primarily to the words of the statute as evidence of the legislature's intent.  
Lemont-Bromberek Combined School District No. 113(a) v. Walter
, 279 Ill. App. 3d 847, 849, 665 N.E.2d 548, 550 (1996).  However, judicial construction is only necessary when the statute is unclear or ambiguous.  
Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School District No. 4
, 215 Ill. App. 3d 506, 511, 575 N.E.2d 556, 559 (1991).  Additionally, while courts construe statutes to give effect to legislative intent as expressed therein (
Schuler v. Beers
, 157 Ill. App. 3d 97, 101, 510 N.E.2d 48, 49-50 (1987)):

"Construction and interpretation of a statute is a question of law for the court, and regardless of the court's opinion regarding the desirability of the results surrounding the operation of the statute, the court must construe the statute as it is and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute." 
 
Buckellew
, 215 Ill. App. 3d at 511, 575 N.E.2d at 559.

See also 
Belfield v. Coop
, 8 Ill. 2d 293, 134 N.E.2d 249 (1956).

In our view, the language of the Securities Law is neither unclear nor ambiguous, as asserted by SPS.  See 
Buckellew
, 215 Ill. App. 3d at 511, 575 N.E.2d at 559.  Rather, the plain language of the statute provides that the two class members whose interests are at issue should receive, as rescission damages, the full amount paid for their interests, plus accrued interest from the date of payment of the securities at 10% per annum, less any income or other amounts received upon the disposition of the securities.  See 815 ILCS 5/13(A)(2) (West 1996).  Here, the parties agree that the total of the calculation is an admittedly nominal amount of $12.50.  Moreover, while Judge McBride's ruling regarding the calculation of interest was not binding upon SPS in the proceedings at issue before this court, we agree that plaintiffs' calculations follow the plain language of the statute.

While the statute is not unclear in regard to the calculation of damages, it does not provide for the calculation of accrued interest after the date of sale, as correctly asserted by defendants.  There is no provision in the statute that would cut off an individual's right to recover interest after the security is sold.  See 815 ILCS 5/13(A) (West 1996).  In our view, a purchaser who sells his securities should be entitled only to interest up to the date of sale and not beyond.  Nevertheless, the statue controls over the calculation.  If the statute is clear and unambiguous, as it is here, we cannot supply omissions, remedy defects, or otherwise change the law so as to depart from the plain meaning of the statute.  
Buckellew
, 215 Ill. App. 3d at 511, 575 N.E.2d at 559.  As such, "regardless of [our] opinion regarding the desirability of results surrounding the operation of the statute *** as it is" (
Buckellew
, 215 Ill. App. 3d at 511, 575 N.E.2d at 559), the circuit court did not err in either refusing to deduct accrued interest from the judgment or adopting the decision of Judge McBride on the calculation of interest.

In light of the foregoing, the decision of the circuit court is affirmed.

Affirmed. 

GORDON and McNULTY, JJ., concur.

GORDON, J., specially concurring.

JUSTICE GORDON, specially concurring:

While I agree with the result reached by the majority, I cannot agree with their reasoning concerning the interest charge until the date of judgment against the full amount paid for a security which was sold prior to judgment.  Clearly, interest can be charged against the amount paid to the seller up to the time of the purchaser's resale.  Moreover, contrary to the seller's contention, I agree that interest may further be charged to the date of judgment upon the difference between the original amount paid by the purchaser and the amount recouped on resale.  Thus, where as here, the purchaser originally paid in excess of $7,000 for the securities which he ultimately resold for $12.50, the interest on the securities which were the subject of the resale may continue to accrue to the date of judgment on the difference between the original purchase price and the amount recouped on resale since, under the statute, the seller is obligated to make restitution for that difference.  However, contrary to the majority, I cannot agree that interest may be charged from the date of recovery against the money actually recovered by the purchaser from the resale.  Since the purchaser has the use of the money received from the resale, any interest received against 

that sum would constitute a windfall and an effective double recovery to the purchaser.  

Contrary to the majority, I do not agree that such construction is compelled under the provisions of section 13A of the Illinois Securities Law of 1953 (815 ILCS 5/13A 
(West 1996)).  Under section 13A(2) on resale by the purchaser, the seller remains liable "for the amounts set forth in clause (1) of this subsection A less any amounts received by the purchaser for or on account of the disposition of the securities."  815 ILCS 5/13A(2) 
(West 1996).  Thus, the seller is released from any obligation to repay the amount which was recovered by the purchaser on resale.  Granted, section 13A(2) refers to the "amount set forth" under 13A(1) as the remaining amount to be paid after deducting the amount received on resale.  However, section 13A(2) need not be construed to include interest charged against the money recovered on resale.  Where the underlying principal indebtedness is reduced by the amount recovered, it naturally follows that the interest obligation is correspondingly diminished.  Interest, as defined, is the "price paid for borrowing money generally expressed as a percentage of the amount borrowed paid on one year."  Webster's Third New International Dictionary 1178 

(1993).  Under this definition, interest would accrue against 

those funds which the seller is liable to pay back to the purchaser.  Such funds would constitute "money borrowed" under the Webster definition.  To the extent that the seller is discharged from liability with respect to any portion of the principal, that portion can no longer be characterized as money borrowed, 
i.e.,
 money which the seller is required to pay back.  It would, therefore, be wholly inappropriate to characterize an ongoing charge against a sum no longer owed, namely, the money recovered from the resale, to be interest due under Section 13A(1).  Accordingly, such a charge would not be due under the provisions of Section 13A(2) which refers to the "amounts set forth" under Section 13A(1).  

Notwithstanding the above, in this cause, the overcharge of interest is minimal, given the fact that the amount recovered on resale was $12.50.  The amount is so minuscule that it can be considered to be 
de minimus
 and would, therefore, not mandate a remand or adjustment.  But the point, nevertheless, has to be made in the event that sums become large enough to warrant further action.

FOOTNOTES
1: SRP III was dismissed from this action on October 23, 1995, due to its discharge in bankruptcy.

2: The Consolidated Complaint was brought against three groups of defendants: (1) the "I.R.E. defendants," on behalf of four subclasses that had purchased interests in I.R.E. limited partnerships; (2) the "Hallwood defendants," on behalf of a subclass that had purchased interests in an Equitec limited partnership; and (3) the "Southmark defendants," on behalf of three subclasses that had purchased interests in Southmark limited partnerships.

3: In a letter dated November 1, 1995, SPS' prior counsel, Arnstein & Lehr, provided plaintiffs' counsel the names, addresses, phone numbers, investment amounts, date of investment for each limited partner, and other data relating to the amount of distributions received by class members.